Scott M. Lowry (CA Bar No. 244504)
scott@lawlb.com
LOWRY BLIXSETH LLP
23632 Calabasas Road, Suite 201
Calabasas, California 91302
Telephone: 818-584-6460
Facsimile: 818-574-6026

Chris Kao (CA Bar No. 227086)
ckao@kaollp.com
Andrew Hamill (CA Bar No. 251156)
ahamill@kaollp.com
Whitney Miner (CA Bar No. 290825)
wminer@kaollp.com
KAO LLP
One Post Street, Suite 1000
San Francisco, California 94104
Telephone: 415-539-0996
Facsimile: 866-267-0243

Attorneys for Plaintiff and Counter-Defendant
govino, LLC

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| GOVINO, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br> v. <br><br> GOVERRE, INC., a Delaware corporation; REGAN KELAHER, an individual; SHANNON ZAPPALA, an individual; and DOES 1-10, <br><br> Defendants. <br><br> ――――――――――――――― <br> GOVERRE, INC., a Delaware corporation, REGAN KELAHER, an individual; SHANNON ZAPPALA, an individual; and DOES 1-10, | CASE NO. 8:17-CV-1237 JLS (JCGX) <br><br> **PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO GOVERRE, INC.'S PARTIAL MOTION FOR SUMMARY JUDGMENT** <br><br> Date:  September 7, 2018 <br> Time: 2:30 p.m. <br> Place: Courtroom 10A <br> Judge: Hon. Josephine L. Staton |

1

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Counter-Plaintiffs,

v.

GOVINO, LLC, a Delaware limited liability company,

Counter-Defendant

Plaintiff govino, LLC submits this Response to Goverre's Statement of Genuine Disputes of Material Fact pursuant to Central District of California Local Rule 56-2 in opposition to the Partial Motion for Summary Judgment herein filed by Defendant GoVerre, Inc., et al.

Facts 1 through 99 below correspond to the facts and supporting evidence presented in the Statement of Undisputed Facts filed by the moving party. These facts are followed by Additional Material Facts and Supporting Evidence showing a genuine dispute.

**Govino's Response to Goverre's Alleged Undisputed Facts**

| Goverre's Alleged Undisputed Facts and Supporting Evidence | Govino's Response and Supporting Evidence |
|---|---|
| 1. Interrogatory No. 1 from both Kelaher and Zappala to Govino asked Govino to identify "each instance presently known to you in which you contend that [the individual defendants] directly ordered, authorized or participated in any tortious conduct related to the claims in your Complaint." Supporting Evidence: | Undisputed. |

| | |
|---|---|
| Casper Dec., Exhibit A: Govino First Supp. Resp. to Defendant Regan Kelaher's Interrogatories No. 1. Casper Dec., Exhibit B: Govino First Supp. Resp. to Defendant Shannon Zappala's Interrogatories No. 1. | |
| 2. Govino's 30(b)(6) corporate representative, Joseph Perrulli, was unable to recite one instance of tortious conduct by either of the individual defendants in his deposition.<br><br>Supporting Evidence:<br>Casper Dec., Exhibit C: Perrulli deposition at pp. 146:1-23; 165:20-166:1. | Disputed.  In the Perrulli deposition excerpts Goverre cites as supporting evidence, Perrulli was not asked about any "instances" of "tortious conduct" by individual defendants.<br><br>Perrulli testified that he had no additional facts to add to the answers that Govino already included in its verified interrogatory responses detailing the individual defendants wrongful conduct, including developing an infringing product.<br><br>Supporting Evidence<br>• Miner Decl. ¶ 30, Ex. AB: Perrulli Dep. Tr. at pp. 124:14-126, 165:23;<br>• Miner Decl. ¶ 4, Ex. B: Govino's Supp. Responses to Kelaher & Zappala's Special Interrogatory No. 1. |
| 3. Govino's final supplemental response to Goverre's Interrogatory 10 listed only three things to support its fame contention: (1) "The | Disputed.  Further characterization as "only three things." Govino did not provide a Sixth Supp. Response to Interrogatory No. 10 and Exhibit D in Goverre's Supporting Evidence does not support its allegation; |

| | |
|---|---|
| numerous awards that GOVINO products have received, as detailed in paragraph no. 13 of the Complaint;" (2) "The widespread publicity that GOVINO products have received, as detailed in paragraph no. 14 of the Complaint;" and (3) "The recognition from wine industry experts that GOVINO products have received, as detailed in paragraph no. 15 of the Complaint." <br><br> Supporting Evidence: <br> Casper Dec., Exhibit D: Govino Sixth Supp. Resp. to Interrogatory No. 10. | Undisputed that Govino's First Supplemental Response to Interrogatory No. 10 is correctly quoted. <br><br><br> Supporting Evidence: <br> • Miner Decl. ¶ 30, Exhibit AB: Perrulli Dep. Tr. at p. 114:5 – 9. |
| 4.  In his 30(b)(6) deposition, Govino's corporate representative had no more substantive allegations to add to Govino's fame contentions. <br><br> Supporting Evidence: <br> Casper Dec., Exhibit C: 30(b)(6) Deposition of Joseph Perrulli at 113:8-114:11. | Disputed. In the Perrulli deposition excerpt Goverre cites as supporting evidence, Perrulli was not asked about "substantive allegations" to add to Govino's fame contentions. <br><br> To the extent Govino understands Goverre's alleged fact, Perrulli testified that there were also "testimonies from sommeliers" and "wine critics," and that there could a be additional facts beyond what is in the Govino's interrogatory response. <br><br> Supporting Evidence: <br> • Miner Decl. ¶ 30, Exhibit AB: Perrulli Dep. Tr. at p. 113:16- |

| | | 114:9. |
|---|---|---|
| 5. | Govino's 30(b)(6) representative testified that its products became famous immediately when launched in 2008.<br><br>Supporting Evidence: Casper Dec., Exhibit C: 30(b)(6) Deposition of Joseph Perrulli at 114:17-21. | Disputed. In the Perrulli deposition excerpts Goverre cites as supporting evidence, Perrulli did not testify that its "products" "became famous immediately when launched." Perrulli was asked in what year Govino contends that its Govino trademark became famous. Perrulli responded "I would guess 2008."<br><br>Govino has multiple products that have been launched at different times.<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 30, Exhibit AB: Perrulli Dep. Tr. at p. 114: 7-21 |
| 6. | A major portion of Govino's marketing expenses are directed to trade shows in the hospitality industry for business-to-business sales that are never seen by the consuming public.<br><br>Supporting Evidence: See Casper Dec., | Disputed. Unsupported legal conclusion. The supporting evidence Goverre cites does not make any mention of the "hospital industry", "business-to-business sales," or whether anything is "seen by the consuming public."<br><br>To the extent Govino understands Goverre's alleged fact, Goverre misinterprets Govino's marketing related expenses and doesn't account for |

5

| | |
|---|---|
| Exhibit P (Deposition Exhibit 164); Casper Dec., Exhibit Q (Deposition Exhibit 165). | Govino's discounted product giveaways, social media takeovers, and offers to trade-for-free product deals with large scale talented social media influencers and photographers.<br><br>Disputed characterization of a "major portion."<br><br><u>Supporting Evidence:</u><br>• Perrulli Decl., ¶16-17, 20, Ex. F and G: Marketing Report and Marketing Partnerships |
| 7. Much larger companies than Govino, who have spent far more on advertising and marketing than Govino, have failed the stringent fame test for purposes of trademark dilution and have been deemed not famous.<br><br><u>Supporting Evidence:</u><br>Coach Services, Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1376 (Fed. Cir. 2012) (COACH high-end handbags and leather goods); Thane Intern., Inc., 305 F.3d 894, 911-912 n.14 (TREK bicycles); Maker's Mark Distillery, Inc. v. Diageo North America, Inc., 703 F. Supp. 2d 671, 698 (W.D. Ky. 2010) (MAKER'S MARK trade dress of | Disputed.  Legal conclusion and not fact.<br><br>Mischaracterizes law. |

| | |
|---|---|
| red dripping wax); Blue Man Productions, Inc. v. Tarmann, 75 U.S.P.Q.2d 1811, 2005 WL 2034544 (T.T.A.B. 2005) (BLUE MAN GROUP entertainment group); Hasbro, Inc. v. Clue Computing, Inc., 66 F. Supp. 2d 117, 52 U.S.P.Q.2d 1402 (D. Mass. 1999), aff'd, 232 F.3d 1 (1st Cir. 2000) (CLUE board game); Advantage Rent-A-Car, Inc. v. Enterprise Rent-A-Car, Co., 238 F.3d 378, 57 U.S.P.Q.2d 1561 (5th Cir. 2001) (WE'LL PICK YOU UP slogan for Enterprise auto rental). | |
| 8. The U.S. Patent and Trademark Office did not find Goverre's trademarks similar to Govino's trademarks and did not cite to any Govino trademarks during the prosecution of Goverre's trademarks.<br><br>Supporting Evidence: Casper Dec., Exhibit E: Certified copies of trademark Prosecution files "Goverre," "Any Wine. Any Time." and "Go Anywhere" | Disputed.  The 129-page trademark prosecution files Goverre cites generally as supporting evidence do not indicate that the examiner considered, or even looked at, the Govino trademarks during the prosecution of Goverre's trademarks.<br><br>Supporting Evidence:<br>• Miner Decl., ¶ 5, Ex. C: Angela Booth Expert Report ¶¶11, 17, and 21. |

| | |
|---|---|
| trademarks<br>Casper Dec., Exhibit F:<br>Deposition of Marco<br>Gonzalez, at 38:1-39:6. | |
| 9. Goverre sought the advice of its attorney in 2014 regarding any potential for its trademarks to infringe on Govino's trademarks.<br><br>Supporting Evidence:<br>Casper Dec., Exhibit F:<br>Deposition of Marco<br>Gonzalez. | Disputed.  Mischaracterizes testimony.<br><br>Supporting Evidence:<br>• Miner Decl., ¶ 5, Ex. AE: Gonzalez Dep, Ex. 180; Gonzalez Dep. Tr. at 31: 1 – 3. |
| 10. Goverre's attorney's opinion was that they should not be concerned about infringing any trademark rights of Govino.<br><br>Supporting Evidence:<br>Casper Dec., Exhibit F:<br>Deposition of Marco<br>Gonzalez. | Disputed.  Goverre mischaracterizes Gonzalez testimony – he testified that<br><br>    "on the issue of Govino we had this discussion that Govino had raised the issue and then done nothing.  They raised the issue and they never borrowed [sic] to contact us.  They raised the issue again but it seems like they're just bummed that this cooler hip new product is being designed…Frankly, it didn't raise that much concern."<br><br>Further disputed because The Gonalez "opinion" does not even conclude that Goverre does not infringe.   Instead Mr. Gonzalez states only that he is "not concerned" about the issue of "likelihood of confusion."  His only explanation is |

8

|  |  |
|---|---|
|  | that "names can change." Presumably Mr. Gonzalez meant that Goverre, the junior user, could change its name to avoid infringement. <br><br> Supporting Evidence: <br> • Miner Decl., ¶ 5, Ex. AE: Gonzalez Dep. Ex. 180; Gonzalez Tr. at p. 30: 21 – 31:4; 38: 1 – 39: 5; 50:3-22. |
| 11. Goverre also sought the legal opinion of a highly renowned trademark attorney after it received a cease and desist letter from Govino in 2017. <br><br> Supporting Evidence: Casper Dec., Exhibit G: July 12, 2017 Written Opinion of Molly Buck Richard. | Disputed. Mischaracterizations of "highly renowned trademark attorney." <br><br> Further disputed that Goverre properly sought the legal opinion of Molly Buck Richard because it withheld relevant information about its future products from Ms. Richard. As of the date of Ms. Richard's opinion letter in July 2017, Goverre had been working on its clear wine glass product which would retail for $14.99, which it is currently marketing as "Clair by Goverre," for at least several months and even had a prototype that it had shown its Shark Tank investors. It had already shown Clair at the Chicago, IHA show involving 8,000 vendors in February 2017. <br><br> Supporting Evidence: <br> • Miner Decl., ¶¶ 14-15, Ex. L-M: Email Chains Between Regan Kelaher and Hugo Wu / For Your Ease Only <br> • Miner Decl., ¶31, Ex. AC: Kelaher Tr. Vol 1 at p. 40:21-23; 44:4-7. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| 12. The Molly Richard opinion letter analyzes the relevant facts, applies the law, and spells out exactly why there is no trademark infringement between the two companies' respective trademarks.<br><br>Supporting Evidence: Casper Dec., Exhibit G: July 12, 2017 Written Opinion of Molly Buck Richard. | Disputed because the opinion does not analyze the relevant facts because Goverre withheld relevant information about its future products from Ms. Richard. As of the date of Ms. Richard's opinion letter in July 2017, Goverre had been working on its clear wine glass product which would retail for $14.99, which it is currently marketing as "Clair by Goverre," for at least several months and even had a prototype that it had shown its Shark Tank investors. It had already shown Clair at the Chicago, IHA show involving 8,000 vendors in February 2017.<br><br>Also disputed because the Richard opinion is flawed because of unsound reasoning and reliance on unreliable evidence. Per Govino's trademark expert, Angela Booth, Richard's opinion is flawed because she partially relies on the trademark examiner's work, then makes assumptions based on the results.<br><br>Angela Booth noted: "Again, it is my opinion that the Richard Report is misleading at Paragraph 2, Page 5 where it states, "[T]he Examining Attorney] did not believe that the mark GO ANYWHERE was confusingly similar to either GOVERRE or ANY WINE. ANY TIME. Or she would have cited either of those prior filed applications as a potential bar."<br><br>Supporting Evidence:<br>• Miner Decl., ¶¶ 14-15, Ex. L-M: Email Chains Between Regan Kelaher and Hugo Wu / For Your |

| | |
|---|---|
| | Ease Only<br>• Miner Decl., ¶31, Ex. AC: Kelaher Tr. Vol 1 40:21-23; 44:4-7.<br>• Casper Dec., Ex. G: July 12, 2017 Written Opinion of Molly Buck Richard.<br>• Miner Decl., ¶ 5, Ex. C: Angela Booth Expert Report ¶¶ 11 and 58 |
| 13. Govino's founder and corporate representative testified that he wrote an email in 2014 (with the intent that it be forwarded to Zappala by John Greer) in which he stated that the two companies' products were "markedly different."<br><br>Supporting Evidence: Casper Dec., Exhibit C: Perrulli depo. at 33:13-34:11; Deposition Exhibit 23. | Disputed.  In the Perrulli deposition excerpt Goverre cites as supporting evidence, Perrulli did not state that he wrote the email with the "intent" that it be forwarded to Zappala.<br><br>Further, Goverre cherry-picked the phrase "markedly different" out of context. Perrulli testified he had not even seen Goverre's product:<br><br>    A: Well, I said it. I didn't really see the product. I don't know – I kind of just said it flippantly in an e-mail.<br><br>Supporting Evidence:<br>• Casper Dec., Exhibit C: Perrulli depo. at 33:13-34:11; Dep. Ex. 23. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| 14. Govino waited over three years after it first contacted Goverre through its intermediary, John Greer, before even sending a cease and desist letter.<br><br>Supporting Evidence:<br>Casper Dec., Exhibit T: May 2, 2017cease and desist letter from Govino to Goverre. | Disputed as to characterization that Govino "waited" 3 years.  Only after Goverre aired on Shark Tank in April of 2017 and closed a deal publicly did Govino find out that Goverre had not been abandoned, as Greer lead Govino to believe, after its first Kickstarter campaign failed.  Govino immediately sent cease & desist letters to Goverre in May.<br><br>Supporting Evidence:<br>• Miner Decl., ¶ 26, Ex. X: Email Chain Between Joseph Perrulli and John Greer |
| 15. Govino's corporate representative, CEO, and Controller could not testify that Govino incurred any actual damages caused by the defendants.<br><br>Supporting Evidence:<br>Casper Dec., Exhibit C: Perrulli deposition at 93:4-95:14; 95:17-96:12; 135:4-14; 135:18-137:4; 138:3-11; Exhibit H: Willett deposition at 57:2-59:13; 59:19-22; 60:19-61:2 (referencing only poor performance by a specific sales representative as the reason for any decline in sales from 2016 to 2017). | Disputed.  In the Perrulli deposition excerpts Goverre cites as supporting evidence, Perrulli was not asked about "actual damages" incurred by Govino.  This misleading characterization of Perrulli's testimony calls for a legal conclusion and is not an undisputed fact.<br><br>Supporting Evidence:<br>• Casper Dec., Exhibit C: Perrulli deposition at 93:4-95:14; 95:17-96:12; 135:4-14; 135:18-137:4; 138:3-11;<br>• Casper Dec., Exhibit H: Willett deposition at 57:2-59:13; 59:19-22; 60:19-61:2. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| 16. Govino's corporate representative, CEO, and Controller could not testify to any sales lost to Goverre.<br><br>Supporting Evidence: Casper Dec., Exhibit C: Perulli deposition at 142:11-143:3; 143:6-144:13; 195:18-196:19; Exhibit H: Willett deposition at 57:2-59:13; 59:19-22; 60:19-61:2 (same). | Disputed.  In the Perulli deposition excerpts Goverre cites as supporting evidence, Perulli was not asked to testify about "any sales lost to Goverre."<br><br>Supporting Evidence:<br>• Casper Dec., Exhibit C: Perulli deposition at 142:11-143:3; 143:6-144:13; 195:18-196:19;<br>• Casper Dec., Exhibit H: Willett deposition at 57:2-59:13; 59:19-22; 60:19-61:2. |
| 17. Govino was asked to state "all facts presently known to you that support your claim that this case is exceptional within the meaning of Lanham Act 15 U.S.C. § 1117 in favor of Govino, and identify all documents and sources of evidence that support this claim." Nothing described in Govino's response was tortious let alone exceptional.<br><br>Supporting Evidence: Casper Dec., Exhibit D: Plaintiff's Sixth Supp. Resp. to Govino's Interrogatories, No. 4. | Disputed.  Goverre mischaracterizes Govino's discovery response.<br><br>Supporting Evidence:<br>• Casper Dec., Exhibit D: Plaintiff's Sixth Supp. Resp. to Govino's Interrogatories, No. 4. |

| | |
|---|---|
| 18. Govino was aware of Goverre's name, products, and mark at least as early as January 2014.<br><br>Supporting Evidence: See Casper Dec., Exhibit C: Perrulli Deposition, at 30:18-31:13; 43:12-21; 44:24-45:2; 51:18-52:9. | Disputed.  Only after Goverre aired on Shark Tank in April of 2017 and closed a deal publicly did Govino find out that Goverre had not been abandoned, as Greer lead Govino to believe, after its first Kickstarter campaign failed.<br><br>On February 14, 2014, just nine days after LJG had entered a contract with Govino, Perrulli again raised the issue to Greer after a concerned Govino affiliate expressed concern after learning that Goverre was on Kickstarter.  Greer responded that i) the "Kickstarter was a non-starter" having fallen "short by $60k"; ii) the project was "on indefinite hold"; and iii) "honestly, GOVERRE doesn't even have a product."<br><br>As of July 2017, after the lawsuit was filed, Goverre had been working on another product, a clear wine glass product which would retail for $14.99, which it is currently marketing as "Clair by Goverre."<br><br>Supporting Evidence:<br>• Miner Decl., ¶¶ 14-15, Ex. L-M: Email Chains Between Regan Kelaher and Hugo Wu / For Your Ease Only;<br>• Miner Decl., ¶31, Ex. AC: Kelaher Tr. Vol 1 40:21-23; 44:4-7.<br>• Miner Decl., ¶ 26, Ex. X: Email Chain Between Joseph Perrulli and John Greer.<br>• Miner Decl., ¶31, Ex. AC: Kelaher Tr. at 48:25 – 49: 50:21<br>• Miner Decl., ¶31, Ex. AC: Zappala Tr. at 326: 23 – 25 |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| | • Miner Decl., ¶36, Ex. AH: Govino Emails |
| 19. Govino did not contact Goverre or Shannon Zappala at any time from 2014 to May 2017 regarding what it considered to be a "potential" naming issue.<br><br>Supporting Evidence: Casper Dec., Exhibit C: Perrulli Deposition, at 31:25-32:14; 53:3-17; 54:6-18. | Disputed.  Greer was supposed to be Govino's agent to do so.  He led Govino to believe that Goverre was a nonstarter.<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 30, Ex. AB: Perrulli Dep. Tr. at 35: 18 – 20<br>• Miner Decl. ¶ 36, Ex. AH; Email Email to Perrulli re: failed kickstarter<br>• Miner Decl. ¶ 30, Ex. AB: Perrulli Dep. Tr. at p. 45: 3 – 46:2;<br>• Perulli Decl., ¶¶ 29-39. |
| 20. Despite having actual knowledge of Goverre's Kickstarter campaign in February 2014, Govino did not retain counsel to investigate any potential infringement or attempt to contact Kickstarter.<br><br>Supporting Evidence: See Casper Dec., Exhibit C: Perrulli Deposition, at 43:12-21; 44:24-45:2; 45:15-17; 46:2-5; 47:9-10; | Disputed because as far as Perrulli was concerned there was no longer any potential infringement issue or need to contact Kickstarter due to John Greer's fraudulent statements made on behalf of Goverre.  As far as Perrulli was concerned, Zappala's previous "Goverre" project was a non-starter.<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 36, Ex. AH: Greer emails to Perrulli.<br>• Miner Decl. ¶ 30, Ex. AB: Perrulli Tr. at 45: 3 – 46:2<br>• Perulli Decl., ¶¶ 29-39. |

| | |
|---|---|
| 49:6-50:6; 50:15-16. | |
| 21. Despite its allegations of "ongoing" and "irreparable" harm, dating back to 2014, Govino failed to contact counsel regarding the matter until April 2017 and served no cease and desist letter on Goverre until May 2017.<br><br>Supporting Evidence: See Casper Dec., Exhibit C: Perrulli Deposition, at 45:10-14; 78:1-13. | Disputed because only after Goverre aired on Shark Tank in April of 2017 and closed a deal publicly did Govino find out that Goverre had not been abandoned, as Greer lead Govino to believe, after its first Kickstarter campaign failed.  Govino immediately sent cease & desist letters to Goverre in May.<br><br>Greer's deception and falsehood denied Govino the opportunity to seek multiple legal options, prejudiced Govino's rights, and limited Govino's only remedy to filing an expensive lawsuit against Goverre and its founders which it did three years after its first Kickstarter campaign in July of 2017.<br><br>Supporting Evidence:<br>• Miner Decl., ¶ 26, Ex. X: Email Chain Between Joseph Perrulli and John Greer<br>• Perulli Decl., ¶¶ 29-39. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| 22. To date, Govino still has not sought temporary injunctive relief and its corporate representative was wholly unable to provide any explanation for the delay.<br><br>Supporting Evidence: See Casper Dec., Exhibit C: Perrulli Deposition, at 109:15-17; 112:7-9, 12; 193:15-194:1; 194:3-7; 196:1-19; 258:2-12. | Undisputed that Govino has not sought temporary injunctive relief in this action.<br><br>Disputed that Govino delayed in seeking any relief in this action.  Govino's good-faith ignorance of Goverre's activities were due to John Greer's fraudulent statements made on behalf of Goverre.<br><br>Further disputed because Goverre mischaracterized Perrulli's testimony; Perrulli deferred to his answer to Govino's board:<br><br>    A. I can't answer that solely by myself. I would have to defer to the board.<br>    […]<br>    A: Again, its not my sole decision. I have a responsibility to the board.<br><br>Supporting Evidence:<br>• Miner Decl., ¶ 26, Ex. X: Email Chain Between Joseph Perrulli and John Greer;<br>• Miner Decl. ¶ 30, Exhibit AB: Perrulli Dep. Tr. at 193: 24 – 194: 4; 196: 13 – 17 |
| 23. Govino claims that the following actions of the individual defendants contributed to their causes of action for trademark and trade dress infringement:<br><br>In 2013, as Ms. Zappala and Ms. Kelaher were determining a name for | Disputed because this list is not exhaustive.<br><br>Kelaher and Zappala, who did not even hire an employee until 2017, authorized, directed, or participated in all of Goverre's infringing activities.  Kelaher and Zappala testified that they each are responsible for the business and divide the work 50-50. |

| | |
|---|---|
| their business, they "extensively referred to Govino" as a source of inspiration;<br><br>Also, in 2013, Ms. Zappala and Ms. Kelaher met with Mr. and Mrs. Greer who provided confidential information regarding Govino, including information about Govino's revenue and the cost of molds for manufacturing glasses;<br><br>Ms. Zappala because [spelling] familiar with Govino as early as 2010 when she visited Joseph Perrulli in Napa, California and discussed Govino with Mr. Perrulli;<br><br>At social events from 2014- 2017, Ms. Zappala and Ms. Kelaher failed to mention Goverre to Mr. Perrulli.<br><br>Supporting Evidence:<br>Casper Dec., Exhibit D: Plaintiff's Sixth Supp. Resp. to Govino's Interrogatories, No. 4; see also Casper Dec., Exhibit A: Plaintiff's | Supporting Evidence:<br>• Miner Decl., ¶ 32, Ex. AD: Zappala Dep. Tr. at 8:9-82<br>• Miner Decl., ¶ 31, Ex. AC: Kelaher Dep. Tr. at 17:11-15, 311:10-12.<br>• Miner Decl., ¶ 40, Ex. AL: Goverre's Response to RFA No. 44.<br>• Miner Decl., ¶ 32, Ex. U: Kickstarter page at GOVINO_0004723 |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| First Supp. Resp. to Zappala's Interrogatories, Set One, at No. 1 and Casper Dec., Exhibit B: Plaintiff's First Supp. Resp. to Kelaher's Interrogatories, Set One, at No. 1. | |
| 24. Govino admits that the actions of the individual defendants of which Govino complains predate even the formation of Goverre LLC in May 2013 and predate the sale of any Goverre products.<br><br>Supporting Evidence: See Casper Dec., Exhibit B: Plaintiff's First Supp. Resp. to Zappala's Interrogatories, Set One, at No. 1, and Casper Dec., Exhibit A: Plaintiff's First Supp. Resp. to Kelaher's Interrogatories, Set One, at No. 1, both expressly stating Ms. Kelaher and Ms. Zappala "participated in wrongful actions that predated the Goverre, LLC corporate entity." | Disputed. Kelaher and Zappala, who did not even hire an employee until 2017, authorized, directed, or participated in all of Goverre's infringing activities. Kelaher and Zappala each testified that they each are responsible for the business and divide the work 50-50.<br><br>Supporting Evidence<br>• Miner Decl. ¶ 32, Ex. AD: Zappala Tr. at 8:9-82; 79-92.<br>• Miner Decl. ¶ 3, Ex. AC: Kelaher Tr. 17:11-15. . |

| | |
|---|---|
| 25. The earliest possible offer for sale of Goverre products would be the January 2014 Kickstarter campaign which took place approximately eight months after the LLC was formed.<br><br>Supporting Evidence: Casper Dec., Exhibit I: Zappala Depo. | Disputed.  The January, 2014 Kickstarter campaign is at most a form of "pre-sales" activity since the Kickstarter page itself admits that the products did not yet exist.  Most of the money raised through Kickstarter was earmarked for completion of product development.<br><br>Further disputed because Goverre failed to provide a complete citation in its Supporting Evidence that Govino can evaluate.<br><br>Supporting Evidence<br>• Miner Decl. ¶ 23, Ex. U, Goverre's 2nd Kickstarter page (Bates stamped Govino_0004634-4740). |
| 26. No Goverre product was actually delivered until March 30, 2015.<br><br>Supporting Evidence: Casper Dec., Exhibit I: Zappala Depo. at 316:9-13. | Undisputed that Goverre did not ship a single glass until March 30, 2015.<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 32, Ex. AD, Zappala Tr. 9-13. |
| 27. Govino's Rule 30(b)(6) corporate representative, Joseph Perulli was unable to identify any specific actions of Shannon Zappala in 2010 for which Govino seeks damages and could not articulate why either of the individual defendants were even named in the lawsuit.<br><br>Supporting Evidence: | Disputed.  Goverrre mischaracterizes testimony.  Perrulli would not speculate what Zappala decided to do.  *See e.g.,*: Perulli Dep Tr. 146:10-23.<br><br>   "Q: Are you saying that she decided in 2010 that she was going to come up with a similar name and launch a product four years later?<br><br>   THE WITNESS: I can't speculate. I mean, it may have been 2010, '11, '12, '13. I just think Govino inspired the name Goverre." |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| See Casper Dec., Exhibit C: Perrulli deposition at 146:1-23; 165:20-166:1. | Further disputed because Kelaher and Zappala, who did not even hire an employee until 2017, authorized, directed, or participated in all of Goverre's infringing activities.  Kelaher and Zappala each testified that they each are responsible for the business and divide the work 50-50.

Supporting Evidence
• Miner Decl. ¶ 30. Perulli Dep. Tr. at 146:10-23.
• Miner Decl. ¶ 31, Ex. AC: Kelaher Tr. at 17:11-15.
• Miner Decl. ¶ 32, Ex. AD: Zappala Tr. at 8:9-82. |
| 28. Govino's Rule 30(b)(6) corporate representative, Joseph Perulli admitted that there is nothing confidential about the proportions of Govino's glass and Govino is asserting no claim that Goverre used any of Govino's molds.

Supporting Evidence:
See Casper Dec., Exhibit C: Perulli Deposition, at 149:7-20. | Disputed.  Goverre mischaracterized Perrulli's testimony.  Perrulli testified that any Govino business  he discussed with John was confidential:

"Q: Was there anything confidential about Govino's glass size proportions?

A: As far as its proportions?

Q: Yes.

A: Being confidential?

Q: Yes.

A: No.

[…]

A: Again, in the context that I was discussing Govino business with John, I always expected it to be |

21

| | confidential." |
|---|---|
| | Disputed that Perrulli "admitted" Govino is not asserting a claim Goverre used any of Govino's molds – Perulli testified he was "unaware of that."  Zappala and Kelaher began the design of their Goverre glass by hiring the reverse-engineering of Govino's glasses to determine the "Govino proportions". Govino's glass was the only glass they reverse engineered.<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 18, Ex. P: Goverre's inventor logbook, Bates stamped GOV_004890-4901.<br>• Miner Decl. ¶ 21, Ex. T: Goverre's investor pitch deck, Bates stamped GOV_004945-4971.<br>• Miner Decl. ¶ 30, Ex. AB: Perrulli Dep. Tr. at 149:7-20; 150:8-10.<br>• Miner Decl. ¶ 32, Ex. AD: Zappala Dep. Tr. at 120:22 – 121: 12.<br>• Miner Decl. ¶ 38, Ex. AJ: Mindflow proposal to Goverre Girls, dated 5/3/2017, Bates stamped GOV_004846 - 53. |
| 29. Govino's Rule 30(b)(6) corporate representative, Joseph Perrulli acknowledged that no one at Govino ever communicated to anyone at Goverre that information pertaining to Govino's revenues, mold casts and "marketing posturing" is considered | Disputed. GoVerre mischaracterizes. Perrulli's testimony.  Goverre did receive govino's confidential information, albeit indirectly. Perrulli also testified that any Govino business  he discussed with John was confidential:<br><br>    "Q: Okay. Next it says "Govino's marketing posturing." Is that -- is Govino contending that that was confidential? |

| | |
|---|---|
| confidential.<br><br>Supporting Evidence: See Casper Dec., Exhibit C: Perrulli Deposition, at 149:24-150:25. | A: Again, in the context of discussing this with John Greer, we shared a lot of ideas; a lot of marketing concepts; so, yes, I would think they are confidential."<br><br>Supporting Evidence:<br>• Casper Dec., Exhibit C: Perrulli Deposition, at 149:24 - 150: 25.<br>• Miner Decl. ¶ 32, Ex. AD Zappala Dep. Tr. at p. 120:22 – 121: 12.<br>• Miner Decl. ¶ 19, Exhibit Q: Goverre's Meeting Minutes, Bates stamped GOV_004902-4918.<br>• Miner Decl. ¶ 37, Exhibit AI: Exhibit AH: email chain between John Greer and Joseph Perrulli, Bates stamped Govino 405. |
| 30. Govino's Rule 30(b)(6) corporate representative Joseph Perrulli testified that Govino's trademark and trade dress became "famous" immediately upon launch in 2008.<br><br>Supporting Evidence: See Casper Dec., Exhibit C: Perrulli Deposition at 114:17-18, 21; 117:16-25; 205:2-10; 208:17-24. | Disputed.  Goverre mischaracterized Perrulli's testimony.  Perrulli did not testify that Govino's fame was "immediate" or that the products were "launched" in 2008.  Govino has multiple products that have been launched at different times.<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 30. Exhibit AB: Perrulli Tr. at 114: 17 – 21. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| 31. Govino's Rule 30(b)(6) corporate representative Joseph Perrulli could not identify the amounts Govino spent on advertising in 2008.<br><br>Supporting Evidence:<br>See Casper Dec., Exhibit C: Perrulli Deposition at 116:22-118:21. | Disputed.  Goverre mischaracterizes testimony.  Perrulli deferred his answer to other employees because he "had blinders on until we hit 10 million [in sales]."<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 30. Exhibit AB: Perrulli Tr. at 117: 13-15. |
| 32. Govino's Rule 30(b)(6) corporate representative Joseph Perrulli testified that Govino's sales in 2008 were "approximately one million."<br><br>Supporting Evidence:<br>See Casper Dec., Exhibit C: Perrulli Deposition at 114:14-20. | Disputed.  Incomplete and mischaracterizes testimony.  Perrulli testified that he "had blinders on until we hit 10 million [in sales]."<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 30, Exhibit AB: Perrulli Tr. at 117: 13-15. |
| 33. Govino's Rule 30(b)(6) corporate representative Joseph Perrulli admitted that it has not conducted any market survey.<br><br>Supporting Evidence:<br>See Casper Dec., Exhibit C: Perrulli Deposition at 120:6-121:3. | Disputed.  Goverre mischaracterizes Perrulli's testimony.  Perrulli testified that he did not know if Govino performed any surveys.  *See e.g.,*:<br><br>"Q: Do you know has Govino performed any surveys to determine the strength of its trademarks?<br><br>A: No."<br><br>Supporting Evidence:<br>• Casper Dec., Exhibit C: Perrulli Deposition at 120:6-121:2. |
| 34. Govino's Senior | Disputed.  Goverre mischaracterizes |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | | |
|---|---|---|
| | Controller, Steven Willet, testified that he had no knowledge of Govino or its products prior to being hired by the company in 2017.<br><br>Supporting Evidence: See Casper Dec., Exhibit H: Deposition of Steven Willet, at 13:22-14:1; 21:6-9. | Steven Willet's testimony – Willet did not recall.<br><br>    "Q: Prior to receiving text from Ms. Weintraub, had you ever seen a Govino product before, either online or in a store or in some other way?<br><br>    A: I don't recall if I did or not."<br><br>Further disputed because Goverre's citations are incomplete and Govino cannot properly evaluate Goverre's claims.  Exhibit H is not identified with any page/line cites.<br><br>Further disputed because "Senior Controller"<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 34, Exhibit AF: Willet Tr. At 115: 18 – 20. |
| 35. | Govino's Director of Marketing, Paulette Estrella, testified that in her interactions with potential consumers, they are often familiar with an "outdoor glass with a thumb notch," but don't know the actual name of the product.<br><br>Supporting Evidence: See Casper Dec., Exhibit J: Deposition of Paulette Estrella, at 82:23-83:20. | Disputed.  Goverre mischaracterizes Estrella's testimony Estrella testified that people recognized the distinguishing notched indent in the glass sidewall, but didn't necessarily remember the name:<br><br>    "A: …a lot of people in that area knew what – what the [Govino] glass looked like, that it was an outdoor glass with a thumb notch, **but didn't necessarily know the name of it**."<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 35, Exhibit AG: Estrella Tr. At 82:21 – 84:8. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| 36. | Govino's Rule 30(b)(6) corporate representative Joseph Perrulli acknowledged that Govino is "nowhere near as big" as widely-known marks like McDonald's and Starbucks.<br><br>Supporting Evidence: See Casper Dec., Exhibit C: Perrulli Deposition at 118:4-9. | Disputed.  Goverre mischaracterizes Perrulli's testimony. Perrulli did not testify Govino is not "nowhere as big as widely known marks" - he testified that Govino was a household name, but nowhere as big as McDonalds and Starbucks.<br><br>"Q. But is it your position that as of today Govino is a household name?<br><br>A. Yes, I've seen people walking into stores with grocery lists stating govino.<br><br>Q. Is it your position that Govino is on par with other widely-known trademarks, like McDonalds and Starbucks?<br><br>A. We are nowhere near that big, but we are – our goal has been to become the Kleenex of this industry – of this category, rather."<br><br>Through years of marketing and developing goodwill, Govino has since become a leading global provider of original and distinctive drinking glasses that include, inter alia, its GOVINO® Go Anywhere® shatterproof, reusable, recyclable™ and dishwasher-safe stemless wine glasses, flutes, cocktail glasses, beer glasses, and decanters (collectively the "GOVINO® Products").<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 30, Exhibit 30: copy of portions of the April 23, 2018 |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | | Certified Deposition Transcript of Joseph Perrulli. Perrulli Tr. At 118:22 – 119:1-13.<br>• Perrulli Decl. ¶ 7. |
| --- | --- | --- |
| 37. | As of May 23, 2018, Govino only had 1,932 followers on Twitter.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 2, Exhibit 1. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 38. | As of May 23, 2018, Coach handbags had 676,000 followers on Twitter.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 3, Exhibit 2. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 39. | As of May 23, 2018, Trek bicycles had 222,000 followers on Twitter.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 4, Exhibit 3. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 40. | As of May 23, 2018, Blue Man Group had 33,900 followers on Twitter.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 5, Exhibit 4. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| 41. As of May 23, 2018, Nike had 7.47M followers on Twitter.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 6, Exhibit 5. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 42. As of May 23, 2018, Starbucks had 11.9M followers on Twitter.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 7, Exhibit 6. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 43. As of May 23, 2018, Govino only had 4,583 followers on Instagram.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 8, Exhibit 7. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 44. As of May 23, 2018, Coach handbags had 2.6M followers on Instagram.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 9, Exhibit 8. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 45. As of May 23, 2018, Trek bicycles had 746,000 followers on Instagram.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 10, Exhibit 9. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |

| | |
|---|---|
| 46. As of May 23, 2018, Blue Man Group had 66,000 followers on Instagram.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 11, Exhibit 10. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 47. As of May 23, 2018, Nike had 77.5M followers on Instagram.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 12, Exhibit 11. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 48. As of May 23, 2018, Starbucks had 16.4M followers on Instagram.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 13, Exhibit 12. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 49. As of May 23, 2018, Trek bicycles had 746,000 followers on Instagram.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 10, Exhibit 9. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 50. As of May 23, 2018, Govino only had 6,893 followers on Facebook.<br><br>Supporting Evidenc: Declaration of Mandi | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |

| | |
|---|---|
| Phillips, ¶ 14, Exhibit 13. | |
| 51. As of May 23, 2018, Coach handbags had 6.98M followers on Facebook.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 15, Exhibit 14. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 52. As of May 23, 2018, Trek bicycles had 1.18M followers on Facebook.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 16, Exhibit 15. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 53. As of May 23, 2018, Blue Man Group had 731,072 followers on Facebook.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 17, Exhibit 16. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 54. As of May 23, 2018, Nike had 30.6M followers on Facebook.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 18, Exhibit 17. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| 55. As of May 23, 2018, Starbucks had 35.69M followers on Facebook.<br><br>Supporting Evidence: Declaration of Mandi Phillips, ¶ 19, Exhibit 18. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 56. Coach handbags have been deemed not famous.<br><br>Supporting Evidence: See, e.g., Coach Services, Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1376 (Fed. Cir. 2012) (COACH handbags). | Disputed.  Legal conclusion and not fact.<br><br>Govino otherwise lacks personal knowledge. |
| 57. Trek bicycles have been deemed not famous.<br><br>Supporting Evidence: Thane Intern., Inc., 305 F.3d 894, 911-912 n.14 (TREK bicycles). | Disputed.  Legal conclusion and not fact.<br><br>Govino otherwise lacks personal knowledge. |
| 58. Blue Man Group has been deemed not famous.<br><br>Supporting Evidence: Blue Man Productions, Inc. v. Tarmann, 75 U.S.P.Q.2d 1811, 2005 WL 2034544 (T.T.A.B. 2005). | Disputed.  Legal conclusion and not fact.<br><br>Govino otherwise lacks personal knowledge. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| 59. Nike has been deemed famous as a matter of law.<br><br>Supporting Evidence: Nike, Inc. v. Nikepal, Int'l, Inc., 2007 U.S. Dist. LEXIS 66686 (E.D. Cal. Sept. 10, 2007). | Disputed.  Legal conclusion and not fact.<br><br>Govino otherwise lacks personal knowledge. |
| 60. Starbucks has been deemed famous as a matter of law.<br><br>Supporting Evidence: Starbucks Corp. v. Glass, 2016 U.S. Dist. LEXIS 145694 (C.D. Cal. Oct. 20, 2016). | Disputed.  Legal conclusion and not fact.<br><br>Govino otherwise lacks personal knowledge. |
| 61. Govino averaged $7,308,580 in annual sales over the last 4 years.<br><br>Supporting Evidence: See Casper Dec., Exhibit Q (Deposition Exhibit 165). | Undisputed that Govino averaged this amount for gross sales in the last 4 years. |
| 62. Coach handbags once had $3.5 billion in annual sales.<br><br>Supporting Evidence: Coach Services, Inc., 668 F.3d at 1365. | Disputed.  Legal conclusion and not fact.<br><br>Govino otherwise lacks personal knowledge. |

| | |
|---|---|
| 63. Trek bicycles's annual sales were not specified, but the Court noted that Trek was considered "the country's most popular and most respected bicycle brand."<br><br>Supporting Evidence: Thane Intern., Inc., 305 F.3d 894, 899 (TREK bicycles). | Disputed.  Legal conclusion and not fact.<br><br>Govino otherwise lacks personal knowledge. |
| 64. In 1997 Nike had "above five billion dollars [in annual sales] per year"<br><br>Supporting Evidence: Nike, Inc., 2007 U.S. Dist. LEXIS 66686 at *8. | Disputed.  Legal conclusion and not fact.<br><br>Govino otherwise lacks personal knowledge. |
| 65. Starbucks annual sales have been measured in the "billions.<br><br>Supporting Evidence: Starbucks Corp., 2016 U.S. Dist. LEXIS 145694 *6. | Disputed.  Legal conclusion and not fact.<br><br>Govino otherwise lacks personal knowledge. |
| 66. Govino's average annual marketing budget was $291,315 over last 4 years.<br><br>Supporting Evidence: See Casper Dec., Exhibit P (Deposition Exhibit 164). | Undisputed that taking line "Total – 6440 – Marketing Expense" (exhibit P of Casper's Dec.) averages $291,315.<br><br>Supporting Evidence:<br>• Casper Dec., Exhibit P (Deposition Exhibit 164). |

| | |
|---|---|
| 67. The annual marketing budget of Coach Handbags has been Close to $125 million.<br><br>Supporting Evidence: Coach Services, Inc., 668 F.3d at 1364. | Disputed. Legal conclusion and not fact.<br><br>Govino otherwise lacks personal knowledge. |
| 68. The annual marketing budget of Trek bicycles has been $3-5 million.<br><br>Supporting Evidence: Nike, Inc., 2007 U.S. Dist. LEXIS 66686 at *10 ("By 1991, Nike was spending in excess of one hundred million dollars per year in the United States alone to advertise products bearing the NIKE mark. By 1997, Nike had spent at least $1,567,900,000.00 to promote the NIKE mark in the United States."). | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 69. The annual marketing budget of Nike has been measured in the Hundreds of Millions.<br><br>Supporting Evidence: Thane Intern., Inc., 305 F.3d at 899. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| 70. At one time, Starbucks had 22,000 retail locations.<br><br>Supporting Evidence: Starbucks Corp., 2016 U.S. Dist. LEXIS 145694. | Undisputed that the screenshot purports to state this information.<br><br>Govino otherwise lacks personal knowledge. |
| 71. In 2017, over a third of Govino's marketing budget was spent on trade shows.<br><br>Supporting Evidence: See Casper Dec., Exhibit P (Deposition Exhibit 164). | Disputed.<br><br>Govino does not dispute that Exhibit P of Casper's Dec. reflects that govino spent over a third of its marketing on trade shows.<br><br>However, govino cannot determine the actual figure GoVerre is relying on in this SOUF based on GoVerre's supporting evidence. The denominator could be the line "Total – 6400 Marketing Expense" or the line "Total Expenditures".<br><br>Supporting Evidence:<br>• Casper Dec., Exhibit P (Deposition Exhibit 164). |
| 72. Govino's actual "Advertising Expense" line items only totaled $3,000.00 in 2014, $24,817.40 in 2015, and $6,014.06 in 2016.<br><br>Supporting Evidence: See Casper Dec., Exhibit P (Deposition Exhibit 164). | Disputed because Goverre misinterprets Govino's advertising expenses and does not factor in additional expenditures not included in ther P&L accounts.  Goverre also omits crucial parts of Exhibit P of Casper's Dec.. Mr. Willet testified that he had to amend the document because relevant information was omitted.<br><br>"Q: … Do you recognize the document that has been marked as Exhibit 164?<br><br>A: Yes, I do. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | Q: And what do you recognize it as?<br>A: I recognize it as the updated expenses that I alluded to earlier in my answer to one of your questions…. And it also incorporates some of those additional website development and redesign costs that we spoke about, which I added at the bottom. The top part is extracted directly from NetSuite, and the additional expenditures I manually inserted."<br><br>The figures Mr. Casper cites are from the top part only.<br><br>Supporting Evidence:<br>• Casper Dec., Exhibit P (Deposition Exhibit 164).<br>• Miner Decl. ¶ 34, Ex. AF, Willet Tr. at 64: 4 - 17 |
|---|---|
| 73. In 2017, Govino's "Advertising Expense" line only totaled $79,301.93.<br><br>Supporting Evidence:<br>See Casper Dec., Exhibit P (Deposition Exhibit 164). | Disputed. Govino incorporates its response to SOUF No. 71. |
| 74. In certain years over the last four years, Govino spent zero dollars on several important advertising channels such as print, social media and ecommerce. | Disputed.<br><br>Govino does not dispute that Exhibit P of Casper's Dec. reflects that govino spent over a third of its marketing on trade shows.<br><br>However, govino cannot determine the actual figure GoVerre is relying on in this |

36

| | |
|---|---|
| Supporting Evidence: See Casper Dec., Exhibit P (Deposition Exhibit 164). | SOUF based on GoVerre's supporting evidence. The denominator could be the line "Total – 6400 Marketing Expense" or the line "Total Expenditures".<br><br>Supporting Evidence:<br>• Casper Dec., Ex. P (Deposition Exhibit 164). |
| 75. Govino does not own a single brick-and-mortar retail location.<br><br>Supporting Evidence: Information and belief. | Undisputed that Govino does not currently own a brick and mortar retail location. Govino does sell its glasses in brick-and-mortar stores.<br><br>Supporting Evidence<br>• Perrulli Decl. ¶¶ 6-20. |
| 76. There are numerous registered trademarks that exist related to cups that incorporate either "go" or "vino."<br><br>Supporting Evidence: See Casper Dec., Exhibit L: Declaration of Valeria Makrogiannis, at ¶¶ 2, 3, 6, 11; see also Exhibit M: Declaration of Claudia Alvarado, at ¶¶ 2, 3; see also Exhibit N: Declaration of Nicole Wichi, at ¶¶ 4, 5, 6, 7, 10, 21. | Undisputed. |

| 77. As was pointed out by Goverre's trademark counsel's opinion letter, there are at least 13 go/vino trademarks currently registered (or that were registered at the time).<br><br>Supporting Evidence: See Casper Dec., Exhibit G: Correspondence from Molly Buck Richard dated July 12, 2017. | Disputed because the opinion does not analyze the relevant facts because Goverre withheld relevant information about its future products from Ms. Richard. As of the date of Ms. Richard's letter in July 2017, Goverre had been working on its clear wine glass product which would retail for $14.99, which it is currently marketing as "Clair by Goverre," for at least several months and even had a prototype that it had shown its Shark Tank investors. It had already shown Clair at the Chicago, IHA show involving 8,000 vendors in February 2017.<br><br>Also disputed because the Richard opinion is flawed because of unsound reasoning and reliance on unreliable evidence. Per Govino's trademark expert, Angela Booth, Richard's opinion is flawed because she partially relies on the trademark examiner's work, then makes assumptions based on the results.<br><br>Angela Booth noted: "Again, it is my opinion that the Richard Report is misleading at Paragraph 2, Page 5 where it states, "[T]he Examining Attorney] did not believe that the mark GO ANYWHERE was confusingly similar to either GOVERRE or ANY WINE. ANY TIME. Or she would have cited either of those prior filed applications as a potential bar."<br><br>Supporting Evidence<br>• Miner Decl. ¶ 5, Ex. C: Angela Booth Report |

| 78. There are numerous stemless wine glass products on the market that incorporate the claimed thumb notch trade dress.<br><br>Supporting Evidence: See Casper Dec., Exhibit N: Declaration of Nicole Wichi at Exhibits 12-19, 21-23, 25; see also Casper Dec., Exhibit L: Declaration of Valeria Makrogiannis at Exhibits 3-7; 9. | Disputed.  Each of the GOVINO® Products are readily identifiable and distinguishable over competitor products, e.g., by way of inclusion of a distinctive ornamental notched indent in the glass sidewall.<br><br>Supporting Evidence<br>• Perrulli Decl. ¶ 8. |
|---|---|
| 79. In a 2017 internal report, Govino identified "Lack of brand awareness" as one of the top issues facing the company.<br><br>Supporting Evidence: See Casper Dec., Exhibit R: "GOVINO_0005287 (Confidential – Highly Confidential - Attorneys' Eyes Only)." | Disputed because Goverre mischaracterizes Govino's marketing strategy.  The 'lack of brand awareness' was identified as an "issue" to be addressed.  In the same document Govino states that "it has the opportunity to become the #1 household shatterproof drinkware in the nation."<br><br>Supporting Evidence:<br>• Casper Dec., Exhibit R: "GOVINO_0005287-88 |

| | |
|---|---|
| 80. The U.S. Patent and Trademark Office did not find Goverre's trademarks similar to Govino's trademarks and did not cite to any Govino trademarks during the prosecution of Goverre's trademarks.<br><br>Supporting Evidence:<br>Casper Dec., Exhibit E: Certified copies of trademark Prosecution files "Goverre," "Any Wine. Any Time." and "Go Anywhere" trademarks; see also Casper Dec., Exhibit F: Deposition of Marco Gonzalez at pp. 35:15-17; 35:20-36:17; 38:1-39:6. | Disputed.  The USPTO's Trademark Examiners did not even consider the GOVINO mark when they examined GOVERRE's trademark application, or Govino's GO ANYWHERE mark when examining GOVERRE's ANY WINE. ANY TIME. Mark.<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 5, Ex. 5; Angela Booth Expert Report ¶¶11, 17 and 21. |
| 81. Goverre was able to register its trademarks over Govino's trademarks and everyone else's "Go" trademarks.<br><br>Supporting Evidence:<br>Casper Dec., Exhibit E: Certified copies of trademark Prosecution files "Goverre," "Any Wine. Any Time." and "Go Anywhere" trademarks; see also Casper Dec., Exhibit F: | Disputed.  The USPTO's Trademark Examiners did not even consider the GOVINO mark when they examined GOVERRE's trademark application, or Govino's GO ANYWHERE mark when examining GOVERRE's ANY WINE. ANY TIME. Mark.<br><br>Undisputed that Goverre was able to register its trademarks as a result of this failure.<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 5, Ex. 5; Angela Booth Expert Report ¶¶11, 17 and 21. |

| | |
|---|---|
| Deposition of Marco Gonzalez at pp. 35:15-17; 35:20-36:17; 38:1-39:6. | |
| 82. None of Goverre's trademarks were cited in response to Govino's subsequent application for the trademark "Go Anywhere."<br><br>Supporting Evidence: Casper Dec., Exhibit E: Certified copies of trademark Prosecution files "Goverre," "Any Wine. Any Time." and "Go Anywhere" trademarks; see also Casper Dec., Exhibit F: Deposition of Marco Gonzalez at pp. 35:15-17; 35:20-36:17; 38:1-39:6. | Disputed.  The USPTO's Trademark Examiners did not even consider the GOVINO mark when they examined GOVERRE's trademark application, or Govino's GO ANYWHERE mark when examining GOVERRE's ANY WINE. ANY TIME. Mark.<br><br>Undisputed that Goverre was able to register its trademarks as a result of this failure.<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 5, Ex. 5; Angela Booth Expert Report ¶¶11, 17 and 21. |
| 83. Govino did not file an opposition during the opposition periods of either of Goverre's trademarks.<br><br>Supporting Evidence: Casper Dec., Exhibit E: Certified copies of trademark Prosecution files "Goverre," "Any Wine. Any Time." | Undisputed but incomplete because Govino did not know or have reason to know about Goverre because of Greer's deception.  His deception and falsehood denied Govino the opportunity to seek multiple legal options, including opposing a trademark proceedings. |

| | |
|---|---|
| 84. Govino did not attempt to cancel Goverre's trademark registrations until after this suit was filed.<br><br>Supporting Evidence: Casper Dec., Exhibit S: Petition for Cancelation of trademark for AnyWine. Any Time. Dated Aug. 11, 2017 and Petition for Cancelation of trademark for Goverre dated July 21, 2017. | Disputed because Goverre mischaracterizes the facts. Govino did not know or have reason to know about Goverre's trademark application because of John Greer's deception. Greer's deception and falsehood denied Govino the opportunity to seek multiple legal options, including cancelling Goverre's trademark registration until after it filed its lawsuit. |
| 85. Once Goverre received a cease and desist letter from Govino, it sought out the legal opinion of a highly renowned trademark attorney, Molly Buck Richard.<br><br>Supporting Evidence: See Casper Dec., Exhibit G: July 12, 2017 Written Opinion of Molly Buck Richard; Casper Dec., Exhibit O: CV of Molly Buck Richard. | Disputed.<br><br>Govino incorporates its response to GoVerre's SOUF No. 11. |
| 86. Ms. Richard issued her written opinion letter on July 12, 2017.<br><br>Supporting Evidence: See Casper Dec., Exhibit G: July 12, 2017 Written Opinion | Undisputed that the letter purports to be written on July 12, 2017. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| of Molly Buck Richard. | |
| 87. Govino's Rule 30(b)(6) representative Perrulli, identified only a "remote chance of infringement" between Govino and Goverre and wrote that the products were "markedly different."<br><br>Supporting Evidence: See Casper Dec., Exhibit C: Perrulli Deposition at 33:13-34:7; 35:18-23 and Deposition Exhibit 34. | Disputed because Goverre mischaracterized Perrulli's testimony. Perrulli qualified his testimony by stating he had not even seen Goverre's product:<br><br>    A: Well, I said it. I didn't really see the product. I don't know – I kind of just said it flippantly in an e-mail.<br><br>Supporting Evidence:<br>• Casper Dec., Exhibit C: Perrulli depo. at 33:13-34:11; Deposition Exhibit 23. |
| 88. Goverre's attorney Marco Gonzalez noted that Goverre had succeeded with its trademark registration without the examiner citing to Govino's trademarks and also noted that the two products were aimed at different consumers and priced substantially different.<br><br>Supporting Evidence: Casper Dec., Exhibit F: Deposition of Marco | Disputed because Goverre mischaracterizes Gonzalez's testimony. Gonzalez testified that "the differentiation between product types, the treatment by the USPTO, and the likely reponse by the wine consumption market, led me to believe that in fact these were entirely distinguishable products, marks, sales, channels, and consumers." Gonzalez qualified his comparison by examining the Goverre product "at the stage of development it was in."<br><br>In July 2017, Goverre had been working on its clear wine glass product which would retail for $14.99, which it is currently marketing as "Clair by |

43

| Gonzalez, at 38:1-39:6. | Goverre."

Supporting Evidence:
• Casper Dec., Exhibit F: Deposition of Marco Gonzalez, at 38:1- 39:4. |
| 89. Gonzalez concluded that Goverre did not need to be concerned about Govino's trademarks.

Supporting Evidence:
Casper Dec., Exhibit F: Deposition of Marco Gonzalez, at 38:1-39:6; 50:3- 51:8. | Disputed.  Goverre mischaracterizes Gonzalez testimony – he testified that

"on the issue of Govino we had this discussion that Govino had raised the issue and then done nothing.  They raised the issue and they never borrowed [sic] to contact us.  They raised the issue again but it seems like they're just bummed that this cooler hip new product is being designed…Frankly, it didn't raise that much concern."

Further disputed because The Gonalez "opinion" does not even conclude that Goverre does not infringe.   Instead Mr. Gonzalez states only that he is "not concerned" about the issue of "likelihood of confusion."  His only explanation is that "names can change."  Presumably Mr. Gonzalez meant that Goverre, the junior user, could change its name to avoid infringement.

Supporting Evidence:
• Miner Decl. ¶ 33, Ex. AE; Gonzalez Tr. at 50:3-22. |

| | |
|---|---|
| 90. In his deposition, Govino's Rule 30(b)(6) representative, Joseph Perrulli was unable to identify any actual damages specifically attributable to the defendants.<br><br>Supporting Evidence: See Casper Dec., Exhibit C: Perrulli Deposition, at 38:6-15; 63:1-65:25; 66:16-67:11; 82:4-23; 94:23-95:12; 95:13-96:12; 109:15-17; 122:17-124:6; 134:6-18; 135:4-14, 18-21; 135:24-136:1; 136:11-137:4; 138:3-11; 142:11-23; 143:6-14; 143:19-44:13; 194:8-195:7; 195:13-25; 210:4-211:24; 215:3-21; 217:16-24; 220:8-11; 257:1- 258:1. | Disputed because Goverre mischaracterized the deposition testimony.<br><br>Goverre reported total gross profits from merchandise sales of **$1,121,080**, for the period from January 2015 through February 2018.  This total does not include amounts labeled as "KS Income", which presumably represent income received from Goverre's Kickstarter campaign.  Meanwhile, Govino's sales dipped by approximately **$1,195,379** from $7,873,879 to $6,678,500 from 2016 to 2017.<br><br>Supporting Evidence:<br>• SOUF ¶ (GOV_004939-40, GOV_005323-26).<br>• Miner Decl. Exhibit __: Perrulli Tr. At 96: 18 – 20; 97: 4 – 7; 135: 22 – 23; 136: 15<br>• Exhibit __: Willet Tr. At 57:2-59:13; 59:19-22; 60:19-61:2 |

| | |
|---|---|
| 91. In his deposition, Govino's Rule 30(b)(6) representative, Joseph Perulli could not identify a single sale lost as a result of Goverre's alleged infringement, nor could he name a single person who was supposedly confused between Govino and Goverre.<br><br>Supporting Evidence: See Casper Dec., Exhibit C: Perulli Deposition, at 38:6-15; 63:1-65:25; 66:16-67:11; 82:4-23; 94:23-95:12; 95:13-96:12; 109:15-17; 122:17-124:6; 134:6-18; 135:4-14, 18-21; 135:24-136:1; 136:11-137:4; 138:3-11; 142:11-23; 143:6-14; 143:19-44:13; 194:8-195:7; 195:13-25; 210:4-211:24; 215:3-21; 217:16-24; 220:8-11; 257:1- 258:1. | Disputed because Goverre mischaracterized the deposition testimony.<br><br>Goverre reported total gross profits from merchandise sales of **$1,121,080**, for the period from January 2015 through February 2018.  This total does not include amounts labeled as "KS Income", which presumably represent income received from Goverre's Kickstarter campaign.  Meanwhile, Govino's sales dipped by approximately **$1,195,379** from $7,873,879 to $6,678,500 from 2016 to 2017.<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 9, Ex. (GOV_004939-40, GOV_005323-26).<br>• Miner Decl. ¶ 30, Ex. AB; Perulli Tr. At 96: 18 – 20; 97: 4 – 7; 135: 22 – 23; 136: 15;<br>• Miner Decl. ¶ 34, Ex. AF: Willet Tr. at 97: 16 – 24. |
| 92. Govino's Senior Controller, Steven Willet, who was identified as Govino's corporate representative regarding sales, testified that no one at Govino has made an attempt to quantify any | Disputed. GoVerre mischaracterizes Mr. Willet's testimony. Willet testified that he was unaware of anyone who had done the calculation. He did not say that no one made the calculation.<br><br>    "Q: Okay. Has Govino made an attempt to quantify any sales that they believe were |

| | | |
|---|---|---|
| | sales that they believe have been lost to Goverre.<br><br>Supporting Evidence: See Casper Dec., Exhibit H: Willet Deposition, at 97:16-98:3. | lost due to the GoVerre product?<br><br>A: I have not been involved in such a calculation.<br><br>Q: Do you know if anybody at the company, other than yourself, has been so involved?<br><br>A: I do not think so. I think they would come to me to try to do that calculation when the time is appropriate."<br><br>GoVerre's supporting evidence does not support this SOUF. Exhibit H is the transcript of Steve Willet's deposition but the cited pages are missing.<br><br>Supporting Evidence:<br>• Miner Decl. ¶ 34, Ex. AF: Willet Tr. at 97: 16 – 24.<br>• Casper Dec., Exhibit H: Willet Deposition, at 97:16-98:3. |
| 93. | Willett testified that he attributed the decrease in sales from 2016 to 2017 in part to deeper discounting in 2016, a large order in 2016 that was not duplicated in 2017, and an underperforming salesman.<br><br>Supporting Evidence: Casper Dec., Exhibit H: Willet Deposition, at | Disputed because Goverre mischaracterizes Willet's testimony – Willet only testified about certain aspects of a sales increase from 2-16-2017, not an overall sales decrease.<br><br>Q I'll say it a different way.  2017 sales, did they increase over 2016 sales?<br>A They did not.<br>Q Okay. Was it stagnate or did they decrease?<br>A They decreased. |

| | |
|---|---|
| 57:2-58:10; 58:19-59:1; 60:10-61:2. | […] <br><br> Do you know what the approximately 15 percent sales decrease is attributable to? <br> A Not specifically. <br> Q Do you know if anybody at the company would have engaged in analysis of what to attribute the decrease in sales to? <br><br> […] <br><br> A I was involved in analyzing certain aspects of the sales decrease, not the overall sales decrease. <br><br> <u>Supporting Evidence:</u> <br> • Miner Decl. ¶, Ex. 34; Willet Tr. at 57:1-19. |
| 94. Govino's Senior Controller, Steven Willet testified that he would not even know how to calculate such a loss. <br><br> <u>Supporting Evidence:</u> <br> Casper Dec., Exhibit H: Willet Deposition, at 97:16-98:3. | Disputed. <br><br> GoVerre mischaracterizes Mr. Willet's testimony. <br><br> • **Mr. Willet testified that he had not thought through the the loss calculation at the time of the deposition. He did not say that he did "not even know how to calculate such a loss."** <br><br> "Q: How would you go about doing that calculation? <br><br> A: Presently, I don't know. I'd really have to think about what my inputs would be to derive at – I don't know at |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| | this point." |
| | GoVerre's supporting evidence does not support this SOUF. Exhibit H is the transcript of Steve Willet's deposition but the relevant pages are missing. |
| | Goverre reported total gross profits from merchandise sales of **$1,121,080**, for the period from January 2015 through February 2018.  This total does not include amounts labeled as "KS Income", which presumably represent income received from Goverre's Kickstarter campaign.  Meanwhile, Govino's sales dipped by approximately **$1,195,379** from $7,873,879 to $6,678,500 from 2016 to 2017. |
| | Supporting Evidence: <br> • Casper Dec., Exhibit H: Willet Deposition, at 97:16-98:3. |
| 95. Goverre's Interrogatory No. 4 asked that Govino "State all facts presently known to you that support your claim that this case is exceptional within the meaning of Lanham Act 15 U.S.C. § 1117 in favor of Govino, and identify all documents and sources of evidence that support this claim." <br><br> Supporting Evidence: <br> Casper Dec., Exhibit D: Govino's Sixth Supp. Resp. to Interrogatory | Undisputed. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| No. 4. | |
| 96. In response to Goverre's Interrogatory No. 4, Govino responded that Defendant Zappala visited Joseph Perrulli in 2010 and "discussed the GOVINO products, Marks, and Trade Dress extensively."<br><br>In 2013 when "Zappala and Ms. Kelaher were coming up with ideas for a business, including the name of the business, they extensively referred to GOVINO as a source of inspiration." "Ms. Zappala and Ms. Kelaher also met with Mr. and Ms. Greer, who provided confidential information regarding GOVINO, including information about GOVINO's revenue and cost of molds for manufacturing glasses." | Undisputed. |

| | |
|---|---|
| Supporting Evidence: Casper Dec., Exhibit D: Govino's Sixth Supp. Resp. to Interrogatory No. 4. | |
| 97. Govino alleges that the individual defendants, Perrulli, and some of his friends "attended numerous social events together in 2014-2017," but never mentioned Goverre. From this allegation, Govino concludes that the defendants "clearly made a concerted effort to hide the fact that they were proceeding with GOVERRE from Perrulli." <br><br> Supporting Evidence: Casper Dec., Exhibit D: Govino's Sixth Supp. Resp. to Interrogatory No. 4. | Disputed because it is incomplete. <br><br> Defendants were deceptive.  Zappala would "Like" Govino on Facebook on April 7, 2013, she hid the fact that they had devised a company called Goverre, reserved a domain name for Goverre, designed a glass off "Govino proportions", and made pitch decks admitting that they would compete with Govino. <br><br> In April 2014, Zappala would further misleadingly congratulate Joseph on Govino developments but continue to suppress facts about Goverre's development, "using Govino proportions", listing Govino as a competitor in pitch decks <br><br> As another example, while Perrulli, along with Zappala, attended Greer's intimate wedding in Italy as one of only a few non-family members in May 2016, where Govino supplied specially seventy-six custom-engraved Govino glasses used throughout the entire  occasion, Greer and Zappala continued to keep silent. |

And as Greer continued to plug Govino and share Govino, including its acquisition by new ownership, Perrulli's new role as Govino's Creative Director, and the release of Govino's new beer glass product, Greer and Zappala kept silent about the fact that Goverre had applied to be on the ABC show Shark Tank, and that Greer was helping Goverre prepare for the appearance.

Even when Perrulli's girlfriend Rebecca Thompson, introduced herself to Zappala as working in wine distribution, sales and marketing for for Maisons & Domaines Henriot, and being a veteran in the wine industry for 20 years, Zappala only told a half-truth about being a "stay-at-home" mom, who used to be in marketing. Neither Zappala, nor Greer brought up how far they'd gone with Goverre, and had by then applied for Shark Tank. Indeed there were plenty of opportunity during the wedding ceremonies, dinner, kitchen cooking together, poolside, happy hour, breakfasts, when they spent 3-4 days at the villa.

Zappala and Greer's suppression of facts continued on to other friendly meetings including 4th of July gatherings with Perrulli and Thompson and a holiday party.

Supporting Evidence
- Miner Decl. ¶, Ex. 34; Willet Tr. at 57:1-19.
- Perrulli Decl., ¶¶ 22-39.

| | | |
|---|---|---|
| | | • Zappala Tr. p. 208:4-25, 303:17-304:5.<br>• Miner Decl. ¶ 32; Zappala Dep. Tr. 208:4-25<br>• Rebecca Thompson Decl.<br>. |
| 98. | Govino acknowledges that it knew of Goverre's public Kickstarter campaigns in January and February of 2014 and even attached copies to its Complaint along with pages from Goverre's Facebook page, Amazon.com page, and publicly available trademark registrations.<br><br>Supporting Evidence: See Casper Dec., Exhibit C: Perrulli Deposition, at 43:12-21; 44:24-45:2; 45:10-17; 46:2-5; 47:9-10; 49:6-50:6; 50:15-16; 78:1-13. | Disputed. Only after Goverre aired on Shark Tank in April of 2017 and closed a deal publicly did Govino find out that Goverre had not been abandoned, as Greer lead Govino to believe,  after its first Kickstarter campaign failed.  Govino immediately sent cease & desist letters to Goverre in May.<br><br>Greer's deception and falsehood denied Govino the opportunity to seek multiple legal options, prejudiced Govino's rights, and limited Govino's only remedy to filing an expensive lawsuit against Goverre and its founders which it did three years after its first Kickstarter campaign in July of 2017.<br><br>Supporting Evidence:<br>• Perrulli Decl., ¶¶ 22-39.<br>• Govino incorporates its response to GoVerre's SOUF No. 14. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| 99. Joseph Perrulli, Govino's 30(b)(6) representative, testified that Govino still does not know the identity of any alleged "Doe" defendants.<br><br>Supporting Evidence: Casper Dec., Exhibit C: Perrulli deposition at 166:2-14; 167:4-9; 168:4-6; 264:1-4. | Undisputed. |

## govino's Additional Uncontroverted Material Facts and Supporting Evidence Showing a Genuine Dispute

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 1. Perrulli founded By The Glass, LLC in 2007 which later became Govino, LLC in January 2014. | Perrulli Decl. ¶4 |
| 2. Govino designs, manufactures, distributes and sells a niche group of drinking vessels. Through years of marketing and developing goodwill, Govino has since become a leading global provider of original and distinctive drinking glasses that include, inter alia, its GOVINO® Go Anywhere® shatterproof, reusable, recyclable™ and dishwasher-safe stemless wine glasses, flutes, cocktail glasses, beer glasses, and decanters. | Perrulli Decl. ¶7 |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 3. Each of the GOVINO® Products are readily identifiable and distinguishable over competitor products, e.g., by way of inclusion of a distinctive ornamental notched indent in the glass sidewall. | Perrulli Decl. ¶ 8. |
| 4. The GOVINO® Products are recognized by experts in the wine industry, such as Nicola Marzovilla (wine distribution company, restaurant and vineyard owner) and Seth Box (director of education for Moët Hennessy USA), both of whom recommended the GOVINO® Go Anywhere® Wine Glass in The New York Times. | Perrulli Decl. ¶ 10, Ex. A: Articles and Govino press releases highlighting this recognition. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 5. Govino has received numerous awards related to the distinctive product configuration and/or trade dress for several of its products. Specifically, the GOVINO® Go Anywhere® Wine Glass won the International Design Excellence Award (IDEA) –Silver Award (2010) and the Good Design Award for 2010 from the Chicago Athenaeum: Museum of Architecture and Design ("Good Design Award"). The GOVINO® Go Anywhere® Flute won the International Design Excellence Award (IDEA) – Bronze Award (2012) and the Good Design Award for 2012. | Perrulli Decl. ¶ 11, Ex's. B-C: Copies of Govino's design awards. |
| 6. The IDEA awards are from the Industrial Designers Society of America, and Govino was the recipient of these awards based on the premise that the GOVINO® Go Anywhere® Wine Glass and the GOVINO® Go Anywhere® Flute made drinking wine out of | Perrulli Decl. ¶ 11, Ex. C: Copy of Govino's design awards. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| plastic glass acceptable in the wine industry. | |
| 7. The GOVINO® "Go Anywhere Dishwasher Safe Series" won the Good Design Award in 2016. | Perrulli Decl. ¶11, Ex. C: Copy of Govino's design awards. |
| 8. GoVerre's jewel-toned glasses won the Pantone Award from the Pantone Institute in 2016. | Perrulli Decl. ¶ 11, Ex. C: Copy of Govino's design awards. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 9. Govino's impact on the history of housewares has been immortalized with the awarding of a free-standing refrigerator-sized plaque at the International Housewares Association ("IHA") headquarters that has been and will displayed at every IHA show since 2008. | Perrulli Decl. ¶ 12, Ex. D: Copy of a picture of the International Housewares Association plaque. |
| 10. Govino's role in the history of wine was documented with the display of the iconic GOVINO® Go Anywhere® Wine Glass and its GOVINO® 4-Pack Tote being featured at the seminal Design Exhibition "How Wine Became Modern" at the San Francisco Museum of Modern Art in 2010. | Perrilli Decl. ¶13. |
| 11. The GOVINO® Go Anywhere® Wine Glass, along with other GOVINO® Products, have been displayed and endorsed through video publications, such as by television personality and well-known celebrity Martha Stewart (marthastewartliving.com) and The Today Show. | Perrulli Decl. ¶ 14. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 12. The GOVINO® Products include product placements in numerous popular TV shows such as The Bachelor®, the George Lopez show, The Martha Stewart Show, The Today Show, The Bachelor, HouseWives of Beverly Hills, Bad Mom's, Oscar® winning movies such as La La Land, and **hundreds** of world-renowned newspapers, magazines and respected online articles that reach millions of readers daily. | Perrulli Decl.  ¶ 14. |
| 13. In particular, Govino's products have been featured in publications such as The New York Times (Dec. 2012, June 2011, Dec. 2010, Apr. 2009), Los Angeles Times (Jul. 2011, Mar. 2008); The Wall Street Journal (Nov. 2012, Jun. 2012); Chicago Tribune (Jul. 2009), Wine Spectator (Dec. 2012, Feb. 2011, Dec. 2008, Sep. 2008), Sunset Magazine (Sept. 2012), Lucky Magazine (Dec. 2011), InStyle Magazine (Mar. 2011), | Perrulli Decl.  ¶ 16, Ex. E: Copies of additional periodicals, articles, and Govino's press releases detailing these awards. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| Real Simple Magazine (Dec. 2010), Los Feliz Ledger (Jul. 2010), Town & Country Magazine (Jun. 2010), Food & Wine Magazine, San Francisco Chronicle (Jan. 2009), Calgary Herald (Jul. 2008), Lucky Magazine (Dec. 2011), Family Circle Magazine (Dec. 2011), Mutineer Magazine (May 2011, Jun. 2011), The San Francisco Chronicle "2011 Gift Guide" (Nov. 2011), NewsDay City Edition (Jul. 2012), GrandLuxe Magazine (Jul. 2012), Bloomberg Markets (Jul. 2013), The Brewer Magazine (Jun. 2016), Casual Living (Jun. 2016), ELLIMAN Media's "8 Items For A Brilliant Backyard" (Jun. 2016), Examiner (May 2016), FSR Magazine (May 2016, Jun. 2016), People Magazine's "Hollywood Gift Guide 2013" (Dec. 2013), San Francisco Magazine (Nov. 2013), BeautyNews NYC Magazine (Nov. 2015), Outdoor Sports Guide (Summer 2015), Saveur | |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| Magazine (Jun. 2015), Imbible (Jun. 2015), Muses & Visionaries Magazine (Jun. 2015), PASTE Magazine (Jun. 2015), HomeWorld Business Magazine (Jun. 2015), Yahoo!'s "Weird and wonderful wine gadgets: 8 tools you'll really use" (May 2015), CHILLED (Jun. 2015), GolfGuideInc (Summer 2015), New England Journal of Golf and Leisure (2014), CraftBrewingBusiness (Jun. 2015), WineBusiness (May 2016), BeerMasters (May 2016), BeerAdvocate Fest (Jun. 2016), NW Yachting Magazine (Jun. 2015), GourmetInsider (May 2016, Jun. 2016), Kitchen News & Housewares Review (May 2016), The Press Democrat (May 2016), Gifts and dec (Jun. 2016), Parker Lifestyle Magazine (Dec. 2016), The North Bay Business Journal (2016), HFN Digital (May 2016), and The Washington Post (Jun. 2016). | |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 14. In 2017 alone, Govino achieved over 24 Million print impressions, and over 842 Million web impressions. | Perrulli Decl. ¶ 16, Ex. F: Govino's Market Coverage Reports from 2015 through 2017 and a Govino business record that identifies Govino's marketing events and partners. |
| 15. Govino has been featured at some of the most internationally known food, wine and music festivals, such as Coachella, Bottlerock, Outside Lands, Aspen Food & Wine, Pebble Beach Food & Wine, and the Robert Mondavi Discover Wine Tour to name a few.  These festivals are particular to the "Go Anywhere" drinking of beverages. There is no more relevant venue where more people would be exposed to Govino at the same time, same place. | Perrulli Decl. ¶¶ 16 - 17, Ex. F: Govino's Market Coverage Reports from 2015 through 2017 and a Govino business record that identifies Govino's marketing events and partners. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 16. Govino has been used at some of at top music festivals, including at:<br><br>• Cochella by top performers<br><br>• Ohana by Norah Jones, Beck, Eddie Vetter, and all other performers<br><br>• Kaboo: festival<br><br>• bottle rock by Bruno Mars, Stevie Wonder/ King of Leon / Tom Petty<br><br>• Outside lands by Radio Head, Tom petty, Paul McCartney<br><br>• Boston Calling by Eminem, The Killers, Jack White | Perrulli Decl. ¶¶ 16 - 17, Ex. F: Govino's Market Coverage Reports from 2015 through 2017 and a Govino business record that identifies Govino's marketing events and partners. |
| 17. The GOVINO® Products are now among the most sought after and well-recognized products in the industry. For example, the GOVINO® Products have been top selling products on Amazon.com, some of which have been highly ranked (i.e., #1-#4) for several years dating back to 2010. | Perrulli Decl. ¶ 19. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 18. Govino enjoys additional exposure through co-branding with other famous brands including Amercian Express, Lexus, Audi, Maserati, Citibank, Madison Square Garden, Martha Stewart, America's Cup, Kentucky Derby, Shake Shack, etc. | Perrulli Decl. ¶ 20, Ex. F: Govino's Market Coverage Reports from 2015 through 2017 and a Govino business record that identifies Govino's marketing events and partners. |
| 19. Govino enjoys additional exposure through partnerships with hundreds of flagship wineries including Robert Mondavi, Rombauer, Duckhorn, Frogsleap, Chatueau de escalan, etc. | Perrulli Decl. ¶ 20, Ex. F: Govino's Market Coverage Reports from 2015 through 2017 and a Govino business record that identifies Govino's marketing events and partners. |
| 20. Govino enjoys additional exposure through value added packaging partnerships with wineries including Layer Cake, Robert Mondavi, Noble Vines, and Ruffino Winery. | Perrulli Decl. ¶ 20, Ex. F: Govino's Market Coverage Reports from 2015 through 2017 and a Govino business record that identifies Govino's marketing events and partners. |
| 21. Govino is the sole and exclusive owner of several valid and enforceable United States trademark registrations for GOVINO and GO ANYWHERE for "Decanters; Drinking vessels" and "wine, wine sold in a flexible pouch, wine sold in a flexible | Perrulli Decl. ¶ 21 |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| pouch with a disposable wine glass, and wine sold in a single serving size". | |
| 22. Govino is the sole and exclusive owner of several valid and enforceable United States trademark registrations that include U.S. Reg. No. 3,586,708 for GOVINO, which registered March 10, 2009 on the Principal Register, for use in connection with "Drinking vessels" in Intl. Class 021 (the "'708 Registration"); U.S. Reg. No. 4,063,605 for GOVINO, which registered November 29, 2011 on the Principal Register, for use in connection with "wine, wine sold in a flexible pouch, wine sold in a flexible pouch with a disposable wine glass, and wine sold in a single serving size" in Intl. Class 033; and U.S. Reg. No. 4,712,133 for GO ANYWHERE, which | Perrulli Decl. ¶ 21 |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| registered March 31, 2015 on the Principal Register, for use in connection with "Decanters; Drinking vessels" in Intl. Class 021 (collectively "GOVINO® Trademarks"). Additionally, the Govino '708 Registration is incontestable. | |
| 23. Govino's success has inspired others to copy its intellectual property and attempt to take a free ride upon its goodwill. Govino has acted to police and enforce such intellection property violations by sending over a hundred takedown notices and cease and desist letters to various infringing entities and filing numerous lawsuits. | *See e.g.., By the Glass, LLC v. Franmara, Inc.,* (N.D. Cal. 13-cv-00879 filed Feb. 27, 20134); *Govino, LLC v. Tuesday Morning, Inc. et al.* No. 8:2017-cv-00473 (C.D. Cal filed Mar. 16, 2017); *Govino, LLC v. Goverre, Inc. et al.* No. 8:2017-cv-01237 (C.D. Cal filed July 19, 2017); *Govino, LLC v. Taza Design et al.* No. 3:2014-cv-05220 (N.D. Cal filed Nov. 25, 2014); *Govino, LLC v. WhitePoles LLC et al.* No. 4:2016-cv-06981 (N.D. Cal. filed December 5, 2016); *Govino, LLC v. At Home Group Inc. et al.* No. 4:2016-cv-00740 (E.D. Tex. filed Sept. 23, 2016). |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 24. John Greer, along with his company, LJG Partners, acted as business advisor for Govino and Govino's predecessor entities beginning in 2007, contracted to re-design Govino's website and refresh its logo between February 2014 through April 2015, and was poised to be Govino's marketing and brand manager. | Perrulli Decl. ¶¶ 22 – 28. |
| 25. Joseph Perrulli considered Greer one of his closest friends for over 30 years. John Greer, served as Joseph Perrulli's and Govino's advisor since Govino's founding. | Perrulli Decl. ¶¶ 22 – 28. |
| 26. In 2010, John Greer brought Shannon Zappala to visit Joseph Perrulli and Govino in Napa. | Perrulli Decl. ¶ 29. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 27. In their early "brainstorming sessions" for GoVerre, Regan Kelaher and Shannon Zappala (and then co-founder Shelby Novell's) examples of ideas ranged from "Laura Kain franchising", "Anthropologie like" "Up Cycling Store", and from a "childhood obesity" and "anti-bulling campaign" to "Real-estate flipping". | Miner Decl. ¶ 19, Ex. Q: Copy of Goverre's Meeting Minutes, Bates stamped GOV_004902-491; Miner Decl. ¶ 31, Ex. AC: Zappala Tr. At 18-21. |
| 28. After John Greer and his then fiancé, now wife Beth O'Hara (now Beth Greer) attended Goverre's business meetings, beginning at least as early as February 4, 2013, Goverre decided to create a portable, stemless, wine glass to compete with Govino.  John Greer and Beth O'Hara were indeed "mentors" throughout. | Miner Decl. ¶ 17, Ex. O: copy of Goverre's Business Plan, Bates stamped GOV_003971-3993.<br><br>Miner Decl. ¶52, Ex. AX, para. 52.  copy of Greer 16-18.<br><br>Miner Decl. ¶ 19, Ex. Q: copy of Goverre's Meeting Minutes, Bates stamped GOV_004902-4918. |
| 29. Regan Kelaher and Shannon Zappala also engaged the services of John Greer's company, LJG Partners, including LJG's Marketing Director, Amanda Whichard Holliday, and Account Executive, Jessica | Miner Decl. ¶ 25, Ex. W: Email chain between John Greer and Shannon Zappala, Bates stamped GREER_024-25.<br><br>Miner Decl. ¶ 50, Ex. AV: Emails between John Greer, Shannon Zappala and Joseph Perrulli from 2013-2017, Bates |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| Gourvitz, who had provided and were providing PR, marketing, and brand management services to Govino. | stamped GOV_5240-41 included.<br><br>Miner Decl. ¶ 51, Ex. AW: Emails between John Greer and Joseph Perrulli, Bates stamped Govino 0000410 - 412, and Govino 0000418.<br><br>Miner Decl. ¶ 54, Ex. AZ, Email chain between Shannon Zappala and John Greer, Bates stamped GOV_0005713-5714.<br><br>Miner Decl. ¶ 53, Ex. AZ: Email from Amanda Holiday to Regan Kelaher, Bates stamped GOV_0001250. |
| 30. Prior to deciding to start a company, Shannon Zappala, Regan Kelaher, and John Greer were intimately familiar with Govino.  For example, previous Goverre co-founder Shelby Novelle admits the extent of their active use of Govino "instead of regular wine glasses" mostly "whenever there was, like, you know, activity going on when there was people over, and we were all visiting and didn't want | Miner Decl. ¶ 29, Ex. AA: Novell Dep Tr. At 20:10-19; 34:21-35:3. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| any broken glasses." <br><br> Shelby Novell also testified (emphasis added): <br> "Q. Do you recall if anybody else was focused on a particular product at these meetings? <br><br> A. **I know they liked the Govino glass because of the idea that it was, you know, kind of an on the go kind of a durable idea** but not to the extent where, you know, it was weird or awkward or I don't know. I can't even think of the word I want to say, but it wasn't like we were fixating on it or anything like that." | |
| 31. Dr. Ronald Butters, govino's linguistic expert, identified many similarities between GOVINO and GOVERRE, such as: <br><br> • They begin with the same three phonemes, [gov-]. <br><br> • The word go.  go + vino and go + verre, so that the most-significant initial portion of each is again exactly the same—that is, the familiar word go followed by a non- | Miner Decl. ¶ 6, Ex. D: Dr. Butter's expert report. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| native word that begins with the letter <V> and the sound [v].<br><br>• They are short words, composed of nearly the same number of PHONEMES (6 versus 5).<br><br>• They begin with an unstressed syllable and are stressed on the second syllable.<br><br>• They have identical consonant-vowel (CV) structures consisting of alternating single consonants followed by vowels.<br><br>• What is true of the phonology of GOVINO and GOVERRE is also true of SPELLING: the marks are of moderate and nearly equal length, beginning with the same three-letter sequence, <GOV->, which makes up approximately half of each word (50% and 42.9% respectively)<br><br>• Furthermore, words ending in <-O> and <-ERRE> are relatively rare in English, thus marking each word as | |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| unusual and generally borrowed from Romance languages (Latin, French, Italian, Spanish).  The fact that the "look" of each word is in this way peculiar or exceptional for both words cancels out the abnormality factor as a feature that might otherwise distinguish one mark from the other. | |
| 32. John Greer admits he thought Goverre and Govino sounded alike (emphasis added):<br><br>"A: **I -- this is one thing I must say that I felt Goverre sounded like Govino.** And I don't know if I ever told them that. They were moving along and excited. **But for a split second, I couldn't help but say those two names sound familiar in my mind.** And I had no reason to  believe that – I mean, Govino is all over the place. They might have seen it one day when they went to a party on a boat or something but -- and it stuck in their mind, or  they just really liked the name "verre" and the word "go." **But I concede, I thought that sounds kind of close**. Not | Miner Decl. ¶ 28, Ex. Z: Greer Dep. Tr. At  113:19-114:9; 251:9-16. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| detrimental, the products were so different, but they sounded kind of similar to me."<br><br>***<br>"A: But G-O-V, G-O-V it's, **"just from my perspective, it sounds similar.** "…, **but I just think they kind of sound similar. Go V, you know. So this is not my professional opinion. It's just, you know, they sound similar to me**" | |
| 33. Shelby Novell, one of Goverre's early members who was involved in the formative stages of Goverre, also testified she thought the names sounded similar: "…G-O-V. I mean, the rest it's different. Could someone get confused, maybe..." | Miner Decl. ¶ 29, Ex. AA: Novell Dep. Tr. at 62:15-24. |
| 34. In Goverre's brainstorming document, Govino is the only wine or wine-glass related product listed (aside from Starbucks which allegedly also serves wine). | Miner Decl. ¶ 32, Ex. AD: Zappala Tr. at 173:22-25 |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 35. Below is a true and correct copy of a screenshot of Goverrre's mantra:<br><br>――――――――――<br><br>**govino**<br>where wine meets design<br>elegant,shatterproof, reusable and recyclable<br>the ultimate go anywhere wine glass<br><br>――――――――――<br><br>We are introducing the first **packable, spill proof, chic, discreet** wine glass<br><br>Tag line *"any wine, any time"* | Miner Decl. ¶20, Ex R: Goverre's mantra document, Bates stamped GOV_004929 |
| 36. The following are ways in which Govino came up in Goverre's developmental documents:<br><br>• Inventor's logbook 1/30/2013 page: " there isn't a travel or to go wine glass (picnic, hiking, movies, sporting events, block parties, walks around the neighborhood…**govino** …spills doesn't travel" [GOV 4892]<br><br>• Inventor's logbook 2/25/2013 page "17 oz **Govino** proportions. [GOV 4896]<br><br>• Inventor's logbook 2/25/2013 page and Investor Pitch Deck for 4/12/2013, respectively: | Miner Decl. ¶ 18, Ex. P: Goverre's inventor logbook, Bates stamped GOV_004890-4901.<br><br>Miner Decl. ¶ 19, Ex. Q: Goverre's Meeting Minutes, Bates stamped GOV_004902-4918.<br><br>Miner Decl. ¶ 22, Ex. T: Goverre's investor pitch deck, Bates stamped GOV_004945-4971. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| "**Govino proportions**" [GOV4896; GOV4950].<br><br>• Meeting Minutes for 2/4/2013: "$40k for **govino** mold"[1] [GOV 004911]<br><br>• Meeting Minutes for 2/4/2013: "**Govino** started high" [GOV 004910]<br><br>• Meeting Minutes for 3/4/2013: "**Govino** has 3 million in sales a year…Dean and DeLuca" (Dean and De Luca is a small mom and pop store in Napa- coincidentally one of Govino's first retailers). [GOV 4915]<br><br>• Project Plan 4/22/14: "**govino** glass to be reverse engineered.  2d drawing with specifications and tolerances. Mechanical drawings.  CAD package." SOUF ¶ [GOV 4854]<br><br>• Project Plan 4/22/14: "Get from engineer, need technical specifications for manufacture **govino**, flask, basic research (In a project planning document) [GOV | |

---

[1] Provided to govino by John Greer. Zappala Tr. 120:22-121:13.

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 4854] <br><br> • Meeting minutes for 2/11/13: "Partnership with, **govino**, thermos, wine glass- 20%" in its meeting minutes [GOV 004912] | |
| 37. Consistent with Goverre's meeting minutes, Goverre founder Shelby Novell confirmed that GoVerre's founders were at least focused (but not fixated) on Govino. <br><br> Shelby Novell testified that: <br><br> "Q: Do you recall if anybody else was focused on a particular product at these meetings? <br><br> A: **I know they liked the Govino glass because of the idea that it was, you know, kind of an on the go kind of a durable idea** but not to the extent where, you know, it was weird or awkward or I don't know. I can't even think of the word I want to say, but it wasn't like we were fixating on it or anything like that." | Miner Decl. ¶ 17, Ex. O: Goverre's Business Plan, Bates stamped GOV_003971-3993. <br><br> Miner Decl. ¶ 17, Ex. O: Goverre's pitch document, Bates stamped GOV_004933-4937. <br><br> Miner Decl. ¶ 29, Ex. AA: Novell Dep Tr., 20:10-19; 34:21-35:3 |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 38. In May 2013, Goverre paid Mindflow Design to reverse engineer the Govino glass.  It was the **only** glass that was reverse engineered. | Miner Decl. ¶ 55, Ex. BA: GOV 000533-545<br><br>Miner Decl. ¶ 31, Ex. AC: Kelaher Tr. At 206:13- 207:25. |
| 39. Mindflow Design provided Goverre a detailed side-by-side CAD drawings showing the Goverre glass derived from the labeled Govino glass including all dimensions and circumferences. | Miner Decl. ¶ 55, Ex. BA: GOV 000533-545<br><br>Miner Decl. ¶ 17, Ex. 17: GOV 03991 |
| 40. Below is a true and correct copy of the CAD drawing Mindflow provided. The Goverre glass (top) derived from the labeled Govino glass (bottom) including all dimensions and circumferences. | Miner Decl. ¶ 55, Ex. BA: GOV 000533-545<br><br>Miner Decl. ¶ 17, Ex. 17: GOV 03991 |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| | |
| 41. John Greer tied the success of Goverre to Govino.  For example, in January 2014, John Greer sent Shannon Zappala and Regan Kelaher an email updating them about Govino's developments- namely that Govino had been purchased by Ladera Vineyards and that Joseph Perrulli had been put in charge of all creative things. | Miner Decl. ¶ 10, Ex. H: Email chain between John Greer and Shannon Zappala, Bates stamped GOV_005299-5230. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 42. In another email discussing Govino's acquisition, John Greer says "I see this as a good sign for GOVERRE!... So excited for you both. Please let me know if Amanda may be of assistance." "Amanda" refers to Amanda Whichard of LJG, who serviced the Govino account. | Miner Decl. ¶ 25, Ex. W: Email chain between John Greer and Shannon Zappala, Bates stamped GREER_024-25. |
| 43. Goverre's meeting minutes also list "partnership with, govino, thermos, wine glass- 20%" presumably as another potential strategy. | Miner Decl. ¶ 19, Ex. Q: Goverre's inventor logbook, Bates stamped GOV_004890-4901. |
| 44. Throughout its business plans and presentations, Goverre identifies Govino as competition. | Miner Decl. ¶ 16, Ex. N: Goverre's April 22, 2014 project plan, Bates stamped GOV_004854.

Miner Decl. ¶ 17, Ex. O: Goverre's Business Plan, Bates stamped GOV_003971-3993.

Miner Decl. ¶ 26, Ex. X: Email chain between John Greer and Joseph Perrulli, Bates stamped GREER_047-51. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 45. Goverre knew that others approached it only through an association with Govino. In one example, April Yap Hennig, a marketer from Sacreddrop.com offered to promote Goverre while mentioning she had "been using GoVino glasses for the beach". | Miner Decl. ¶ 13, Ex. K: Email chain between the Goverre Girls and April Yap-Henning of Sacred Drop, LLC, Bates stamped GOV_005327-5330. |
| 46. No other product was mentioned by April Yap Hennig in her offer to promote Goverre. | Miner Decl. ¶ 13, Ex. K: Email chain between the Goverre Girls and April Yap-Henning of Sacred Drop, LLC, Bates stamped GOV_005327-5330. |
| 47. Monti Porter, a sales representative from Scarletco messaged Goverre with "Hi- We love your Goverre! We currently represent Govino in the Pacific NW and would love to also represent Goverre when you are ready to work with sales representation...". | Miner Decl. ¶ 11, Ex. I: Monti Porter to Regan Kelaher, Bates stamped GOV_005301. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 48. No other company name was mentioned in Monti Porter's sales representative message to GoVerre. | Miner Decl. ¶ 11, Ex. I: Monti Porter to Regan Kelaher, Bates stamped GOV_005301. |
| 49. John Greer passed Shannon Zappala and Regan Kelaher Govino's confidential financial and pricing information, and business strategies. For example:<br><br>• John Greer provided Goverre Govino's marketing position on 2/3/2014: "govino started high" [GOV 4910]<br><br>• John Greer provided Goverre Govino's mold costs on 2/3/2014: $40k for govino mold [GOV 4910]<br><br>• John Greer provided Goverre Govino's sales information on 3/4/2013: Govino has 3 million in sales a year…Dean and DeLuca"<br>   a.  [GOV 4915] | Miner Decl. ¶ 31, Ex. AC: Zappala Dep. Tr. At 120-122.<br><br>Miner Decl. ¶ 19, Ex. Q: Goverre's Meeting Minutes, Bates stamped GOV_004902-4918. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 50. While Shannon Zappala would "Like" Govino on Facebook on April 7, 2013, she hid the fact that they had devised a company called Goverre, reserved a domain name for Goverre, designed a glass off "Govino proportions", and made pitch decks admitting that they would compete with Govino.<br><br>Shannon Zappala testified:<br><br>"A: We reserved GoVerre Ware.<br><br>Q: Okay. So by April 7th, 2013, you had reserved –<br><br>A: We had an idea –<br><br>Q: -- GoVerre Ware?<br><br>A: Yes. And we also had reserved Fizz Lounge, too.<br><br>Q: Okay. And you had made pitch decks with GoVerre on them.<br><br>A: Yeah.<br><br>Q: Okay. | Miner Decl. ¶ 31, Ex. AD: Zappala Dep. Tr. At 208:4-25.<br><br>Miner Decl. ¶ 49, Ex. AU: Govino 374: Copies of Facebook postings, Bates Stamped: GOVINO_0000359, 0000361, 0000374, 0000375, 0000390, and 0000448. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| A: An idea.<br><br>Q: And you had -- you were talking to engineers about creating a product?<br><br>A: Yes.<br><br>Q: And you had been talking about Govino proportions?<br><br>A: We mentioned it, yes.<br>Q: And you had pitch decks that talked about Govino as competition.<br>A: Sure.<br><br>Q: And then April 7th, 2013, you do a like of Govino." | |
| 51. In January 2014, Govino discovered that John Greer had supported a company called Goverre, co-founded by Shannon Zappala on Facebook. | Perrulli Decl. ¶ 29. |
| 52. John Greer represented that Regan Kelaher and Shannon Zappala were trying to raise money to start a company on Kickstarter, and that if they couldn't meet their funding goal, the project | Perrulli Decl. ¶ 30.<br><br>Miner Decl. ¶ 26, Ex. X: email chain between John Greer and Joseph Perrulli, Bates stamped GREER_047-51. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| would be "put on hold indefinitely."  Greer further downplayed the threat by portraying Shannon Zappala and Regan Kelaher as amateur moms that were in over their heads, and reaffirming his allegiance to Govino. | |
| 53. On February 14, 2014, just nine days after LJG had entered a contract with Govino, Joseph Perrulli again raised the issue to John Greer after a concerned Govino affiliate expressed concern after learning that Goverre was on Kickstarter.<br><br>John Greer responded that i) the "Kickstarter was a non-starter" having fallen "short by $60k"; ii) the project was "on indefinite hold"; and iii) "honestly, GOVERRE doesn't even have a product."<br><br>John Greer then informed Joseph Perrulli that "If it ever gets off the ground to a point where they are even in limited production, I think a serious legal notice from your attorney would of course be | Perrulli Decl.  ¶ 31.<br><br>Miner Decl. ¶ 26, Ex. X: email chain between John Greer and Joseph Perrulli, Bates stamped GREER_047-51. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| warranted." John Greer closed by reiterating to Govino that "without exception, my heart and focus lies on helping you make Govino successful"; and that "as you know, it's been a personal passion of mine for a great while." | |
| 54. Shannon Zappala testified that John Greer's statements in his February 4, 2014 email to Joseph Perrulli were false, and Goverre was never on indefinite hold. She said: "Q: Okay. But you had by no means given up on GoVerre. A: At this point, no. Q: Okay. And did anyone tell Joseph Perrulli that you had not given up on Govino? MR. KLEMCHUK: Objection. THE WITNESS: I don't know. BY MR. KAO: Q: You didn't tell Joseph Perrulli. A: No. | Miner Decl. ¶ 32, Ex. AD: Zappala Dep. Tr. At 256:12-22; 259:13-23. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| Q: Okay. You didn't ask John Greer to tell Joseph Perrulli -- A: No." | |
| 55. What John Greer did **not** tell Joseph Perrulli and Govino was that just days before, on or around January 17, 2014, John Greer attended GOVERRE's private launch party. | Miner Decl. ¶ 27, Ex. Y: GOV 1235-1237. |
| 56. After Goverre's launch party on or around January 17, 2014, John Greer had just congratulated Regan Kelaher and Shannon Zappala, and advised them that the "next 28 days are really 'mission critical' and offered the services of LJG marketing director Amanda Whichard to help with "connecting of micro-campaigns and the execution of these". | Miner Decl. ¶ 27, Ex. Y: GOV 1235-1237. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 57. Greer also received a rendering of Goverre to share with his expert months before. | Miner Decl. ¶ 56, Ex. BB: Email chain between Shannon Zappala, Regan Kelaher, and John Greer, Bates stamped GOV_001243 – 1246. |
| 58. Having dissuaded Jospeh Perrulli and Govino's concerns, the same day, Greer issued a $2,000 check from LJG Partners to Goverre to help Goverre move forward. Greer immediately continued behind Govino's back and Defendants continued to promote Goverre on social media, and facilitate its promotional events. | Perrulli Decl. ¶ 30. Miner Decl. ¶ 23, Ex. V: Greer 10 - 11 |
| 59. While Greer was conversing with Perrulli and dissuading Govino from taking action, he was passing information to Zappala. Zappala certainly understood the concern (GoVerre's infringement on govino's intellectual property) and was on notice, telling Greer "My only concern, at this point in time, is not getting you into the | Miner Decl. ¶ 43, Ex. AO: Email between Shannon Zappala and John Greer, Bates Stamped GOV_005237-5239. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| middle of anything" and "OK! Will I still be allowed up in Govino land?? ;) hehe." | |
| 60. John Greer allowed the falsehoods and Govino's detrimental reliance to continue even as Goverre continued to develop into a competitor and threat over the next year and a half. | Perrulli Decl. ¶ 43<br><br>Miner Decl. ¶ 42, Ex. AN: E-mail between John Greer and Shannon Zappala, Bates Stamped GREER_14-15.<br><br>Miner Decl. ¶ 43, Ex. AV: Email between Shannon Zappala and John Greer, Bates Stamped GOV_005237-5239.<br><br>Miner Decl. ¶ 48, Ex. AT: Email dated March 12, 2015 between John Greer and Joseph Perulli, Bates Stamped Govino 0000379-381.<br><br>Miner Decl. ¶ 50, Ex. AV: E-mail communications between John Greer, Shannon Zappala, and Regan Kelaher from 2013-2017.<br><br>Miner Decl. ¶ 56, Ex. AV: Email chain between Shannon Zappala, Regan Kelaher, and John Greer, Bates stamped |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| | GOV_001243 – 1246. |
| 61. While LJG Partners was retained to develop a new media campaign, refresh its brand and logo, and redesign Govino's website in 2014-2015, John Greer kept silent every step of the way including: when Goverre initiated a second Kickstarter campaign; when Goverre's second Kickstarter campaign became successful; when Defendants continued to help Goverre with its public relations, social media marketing, brand management, and press outreach for upcoming trade shows; and when Goverre began shipping product to its customers. | Perrulli Decl. ¶ 43<br><br>Miner Decl.  ¶ 42, Ex. AN: E-mail between John Greer and Shannon Zappala, Bates Stamped GREER_14-15.<br><br>Miner Decl.  ¶ 43, Ex. AV: Email between Shannon Zappala and John Greer, Bates Stamped GOV_005237-5239.<br><br>Miner Decl.  ¶ 48, Ex. AT: Email dated March 12, 2015 between John Greer and Joseph Perulli, Bates Stamped Govino 0000379-381.<br><br>Miner Decl.  ¶ 50, Ex. AV: E-mail communications between John Greer, Shannon Zappala, and Regan Kelaher from 2013-2017.<br><br>Miner Decl.  ¶ 56, Ex. AV: Email chain between Shannon Zappala, Regan Kelaher, and John Greer, Bates stamped |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| | GOV_001243 – 1246. |
| 62. In April 2014, Shannon Zappala would further misleadingly congratulate Joseph Perrulli on Govino developments but continue to suppress facts about Goverre's development, "using Govino proportions", listing Govino as a competitor in pitch decks. | Perrulli Decl. ¶ 38. <br><br> Miner Decl. ¶ 49, Ex. AU: Facebook postings, Bates Stamped: GOVINO_0000359, 0000361, 0000375, 0000390, and 0000448. |
| 63. As far as Jospeh Perrulli was concerned, Shannon Zappala's previous "Goverre" project was a non-starter that was a source of embarrassment to her, and not worth mentioning. <br> Shannon Zappla testified: <br><br> "Q: And it says, "Congratulations, Joseph. So happy for you." Why were you happy for him? <br><br> A: I don't know. I don't know what the post was. | Perrulli Decl. ¶ ¶ 30 – 31, 33, and 38. <br><br> Miner Decl. ¶31, Ex. AC: Zappala Tr. 224:4-225:5. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| Q: Okay.<br><br>A: I know what the e-mail was and I know what I said in the e-mail, but I don't know what this Facebook I post is without seeing the picture or the comment.<br><br>Q: Okay. At this point, had you ever talked to Joseph about GoVerre?<br><br>A: No.<br><br>Q: Okay. Ever mention that you were founding a company called GoVerre?<br><br>A: I'm not -- I don't know. I don't recall. No.<br><br>Q: No. You didn't send him any communications or indicate anything on Facebook?<br><br>A: No.<br><br>Q: But you've liked his other posts, so are you -- liked his pictures?<br><br>A: Sure. Yeah. | |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| Q: Okay. You didn't tell Joseph that you guys were using Govino proportions?<br><br>A: No. I didn't have conversations with Joseph.<br><br>Q: You didn't tell Joseph that you considered Govino to be a competitor?<br><br>A: No.<br><br>Q: And that Govino was listed as a competitor in your pitch decks?<br><br>A: I did not tell him that, no.<br><br>Q: Okay. But you're congratulating Joseph.<br><br>A: Yes, I am congratulating him." | |
| 64. While Joseph Perrulli, along with Shannon Zappala, attended Greer's intimate wedding in Italy as one of only a few non-family members in May 2016, where Govino supplied specially seventy-six custom-engraved Govino glasses used throughout the entire occasion, John Greer and | Perrulli Decl.  ¶ 34 – 35, 38.<br><br>Miner Decl.  ¶ 32, Ex. AD: Zappala Tr. At 303:17-304:5.<br><br>Thompson Decl. ¶ 4-15 |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
| --- | --- |
| Shannon Zappala continued to keep silent. | |
| 65. As John Greer continued to plug Govino and share Govino, including its acquisition by new ownership, Joseph Perrulli's new role as Govino's Creative Director, and the release of Govino's new beer glass product, John Greer and Shannon Zappala kept silent about the fact that Goverre had applied to be on the ABC show Shark Tank, and that Greer was helping Goverre prepare for that appearance. | Perrulli Decl. ¶ ¶ 28, 38.<br><br>Miner Decl.  ¶ 25, Ex.: W: email chain between John Greer and Shannon Zappala, Bates stamped GREER_024-25. |
| 66. Even when Perrulli's girlfriend, Rebecca Thompson, introduced herself to Shannon Zappala as working in wine distribution, sales and marketing for for Maisons & Domaines Henriot, and being a veteran in the wine industry for 20 years, | Thompson Decl., ¶ ¶ 2, 4 - 7 |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| Shannon Zappala only told a half-truth about being a "stay-at-home" mom, who used to be in marketing. | |
| 67. Neither Shannon Zappala, nor John Greer brought up how far they'd gone with Goverre, and had by then applied for Shark Tank. Indeed, there were plenty of opportunity during the wedding ceremonies, dinner, kitchen cooking together, poolside, happy hour, breakfasts, when they spent 3-4 days at the villa. | Thompson Decl., ¶¶ 4 – 7, 15  Perrulli Decl., ¶¶ 35, 38. |
| 68. Shannon Zappala's and John Greer's suppression of facts concerning Goverre continued on to other friendly meetings including 4th of July gatherings with Joseph Perrulli and Rebecca Thompson and a holiday party. | Thomspon Decl. ¶ 3, 8 -14 |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 69. Only after Goverre aired on Shark Tank in April of 2017 and closed a deal publicly did Govino find out that Goverre had not been abandoned after its first Kickstarter campaign failed. Govino immediately sent cease & desist letters to Goverre in May. | Perrulli Decl. ¶¶ 42 - 44 |
| 70. Goverre did not ship a single glass until March 30, 2015. | Miner Decl. ¶ 23, Ex. U: Goverre's 2nd Kickstarter page, Bates stamped GOVINO_0004634-4740. Miner Decl. ¶ 32, Ex. AD, Zappala Tr. at 316:6-13. |
| 71. Goverre claims it began selling its product in January 2014, when it launched its first Kickstarter campaign. | Miner Decl. ¶ 45, Ex. AQ: Goverre's First Supplemental Responses to Govino's Special Interrogatories, Set One. |
| 72. Goverre's January 2014 Kickstarter campaign is at most a form of "pre-sales" activity since the Kickstarter page itself admits that the products did not yet exist. | Miner Decl. ¶ 23, Ex. U: Govino 0004634-660. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 73. Govino's trademark rights are strong, as evidenced by significant recognition and publicity. | Perrulli Decl. ¶¶ 6-20, Ex's A-F (Publications, Awards, Press Releases). |
| 74. Govino diligently filed suit after discovering that Goverre was on the market in April, 2017. | Perrulli Decl. ¶¶ 37-39. |
| 75. The many inquiries to Govino sales representatives about Goverre evidence customer confusion and diversion of sales if relief is denied. | Perrulli Decl. ¶ 37; Miner Decl. ¶ 4, May 11, 2018; Govino's 6th Supp. Response to Goverre's Rog No. 1 |
| 76. Any delay by Govino in enforcing its legal rights is attributable to good-faith ignorance of Goverre's activities due to John Greer's fraudulent statements made on behalf of Goverre. | Perrulli Decl. ¶¶ 29- - 36, 38 – 39; Miner Decl. ¶¶ 25, 42-43, 48, 50 , 56 Ex's AN, AV, AT, X (Emails). |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 77. Govino and Goverre compete for customers looking for stemless on-the-go wine glasses. | Miner Decl. ¶ 3, Ex. A: Goverre's Response to Govino's Interrogatory No. 4. |
| 78. Goverre was shipping product for only two years when Govino brought suit. | Miner Decl. ¶ 32, Ex. AD, Zappala Tr. at 316:6-13. |
| 79. According to Coast Law Group's firm page, Marco Gonzalez oversees the Coast Law Group's "Environment & Land Use, Government Relations, and Election Law practice area groups" and also "assists with matters under the Real Estate, Action Sports, Business, and Litigation practice groups." | Rhodes Decl. ¶ 4, Ex. D: screenshot of Marco Gonzalez's LinkedIn page.<br><br>Rhodes Decl. ¶ 6, Ex. E: screenshot of Coast Law Group's Webpage. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 80. Goverre's engagement letter with Coast Law Group does not even mention trademark law. It instead specifies that Marco Gonzalez will "draft and file a provisional patent for the product, and to provide general business and legal consulting services." | Rhodes Decl. ¶ 4, Ex. D: screenshot of Marco Gonzalez's LinkedIn page.<br><br>Rhodes Decl. ¶ 1, Ex. E: screenshot of Coast Law Group's Webpage. |
| 81. In her expert report, Angela Booth, govino's trademark expert, notes that GOVERRE trademark application's prosecution history is not relevant to whether there is a likelihood of confusion between GOVINO and GOVERRE. Importantly, the USPTO's Examining Attorney did not even consider the GOVINO mark when she examined GOVERRE's application. | Miner Decl. ¶ 5, Ex. C: Expert Report of Angela Small Booth, ¶¶ 21-47; 54-58. |
| 82. Standards for evaluating likelihood of confusion in the USPTO's examination process is more much limited than litigation since Trademark Examiners are limited to evaluating the potentially conflicting trademarks *as filed* for the goods and | Miner Decl. ¶ 5, Ex. C: Expert Report of Angela Small Booth, ¶¶ 21-47; 30-58. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| services *as described* in the pending applications and Trademark Examiners search results are often flawed, as they were during the examinations of Govino and Goverre's applications. | |
| 83. As of the date of Ms. Richard's opinion letter in July 2017, Goverre had been working on its clear wine glass product which would retail for $14.99, which it is currently marketing as "Clair by Goverre," for at least several months and even had a prototype that it had shown its Shark Tank investors. | Miner Decl. ¶ 14, Ex. L: Email chain between Regan Kelaher and Hugo Wu, Bates stamped GOV_001199-1214.<br><br>Miner Decl. ¶ 15, Ex. M: Email chain between Regan Kelaher and Kristen Robertson, Dan Greiner, and Lori Greiner, Bates stamped GOV_001215-1230.<br><br>Miner Decl. ¶ 31, Ex. AC: Kelaher Tr. At 40:21-23; 44:4-7. |
| 84. Goverre had already shown Clair at the Chicago, IHA show involving 8,000 vendors in February 2017. | Miner Decl. ¶ 31, Ex. AC: Kelaher Tr. At Kelaher Tr. At 44:35-45. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT


| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 85. Clair was one of Goverre's two products. | Miner Decl. ¶ 31, Ex. AC: Kelaher Tr. At 45:17-19. |
| 86. Molly Buck Richard testified under oath that she never had any discussions with Goverre about its future products, including Clair. | Miner Decl. ¶ 44, Ex. AP: Richard Tr. At 46-47. |
| 87. Goverre sells its glasses in "retail stores and on the internet through online retailers and the company's website." | Miner Decl. ¶ 3, Ex. A: Goverre's Response to Govino's Interrogatory No. 4. |
| 88. Govino also sells in retail stores and on the Internet through online retailers. Indeed, Govino and Goverre glasses are both sold on Wine Enthusiast (online), Touch of Modern (online), QVC (online) and Amazon (online). | Miner Decl. ¶ 3, Ex. A: Goverre's Response to Govino's Interrogatory No. 9. Miner Decl. |

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 89. Both glasses are marketed on Amazon as portable, stemless wine glasses for consumers on the go.<br><br>From Amazon:<br><br>"Leave them at home or bring your Govino anywhere. To the beach, at the golf or tennis club, by the pool, on a boat, camping, anywhere you need, Govino can conveniently travel with you"<br><br>"Made of Glass, GOVERRE is a modern portable to-go cup for your wine. Perfect for wine enthusiasts. Just pour, seal and go. Dishwasher safe, our glasses hold 17 oz (1/2 bottle of wine.)" | Rhodes Decl. ¶¶ 1, 2, Ex. A - B: Screenshots of Amazon website |
| 90. Goverre reported total gross profits from merchandise sales of **$1,121,080**, from January 2015 through February 2018. | Miner Decl. ¶ 9, Ex. G: Goverre's January 2014 – March 2017 Profit and Loss Statement, Bates stamped GOV_004939-4940.<br><br>Miner Decl. ¶ 12, Ex. J: Goverre's April 2017-February 2018 Profit and Loss Statement, Bates stamped GOV_005323-5326. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 91. Regan Kelaher and Shannon Zappala, who did not even hire an employee until 2017, authorized, directed, or participated in all of Goverre's infringing activities. | Miner Decl. ¶ 31, Ex. AD: Kelaher Tr. At 17:11-15. |
| 92. In their depositions, Regan Kelaher and Shannon Zappala each state that they each are responsible for the business and divide the work 50-50. | Miner Decl. ¶ 31, Ex. AD: Kelaher Tr. At 16: 15 – 25.<br><br>Miner Decl. ¶ 32, Ex. AC: Zappala Tr. At 78:5 - 82: 21. |
| 93. Defendants also admit that Goverre is "copied" and that its "name is objectionable." In Goverre's Business Plan circulated September 2014, it lists a "SWOT Analysis", an acronym for "weakness, threat, opportunity". Id.  It lists as a "weakness"/"threat" to the company that its "name is objectionable." | Miner Decl. ¶ 17, Ex. O: Goverre's Business Plan, Bates stamped GOV_003971-3993. |

| Govino's Additional Uncontroverted Material Facts | Govino's Supporting Evidence Showing A Genuine Issue |
|---|---|
| 94. The Gonzalez email does not even conclude that Goverre does not infringe. Instead Mr. Gonzalez states only that he is "not concerned" about the issue of "likelihood of confusion." His only explanation is that "names can change." | Miner Decl. ¶ 17, Ex. O: Email chain between Goverre and Marco Gonzalez, Bates stamped GOV_009121 – 009131. |

Dated: August 17, 2018

By:  */s/ Chris Kao*

Scott M. Lowry (CA Bar No. 244504)
scott@lawlb.com
LOWRY BLIXSETH LLP

Chris Kao (CA Bar No. 227086)
ckao@kaollp.com
Andrew Hamill (CA Bar No. 251156)
ahamill@kaollp.com
Whitney Miner (CA Bar No. 290825)
wminer@kaollp.com
KAO LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2018, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the registered participants as identified on the Notice of Electronic Filing (NEF).


*/s/ Whitney Miner*
Whitney Miner

PLAINTIFF GOVINO, LLC'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT