**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| GOVINO, LLC, a Delaware limited liability company, | ) Case No. 8:17-cv-1237 JLS-E |
| | ) |
| | ) **FINAL PRETRIAL** |
| Plaintiff and | ) **ORDER** |
| Counter-Defendant, | ) |
| v. | ) |
| | ) |
| GOVERRE, INC., a Delaware corporation; REGAN KELAHER, an individual; SHANNON ZAPPALA, an individual; and DOES 1-10, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants and | ) |
| Counter-Plaintiffs. | ) |
| | ) |

Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, IT IS ORDERED:

1.   The parties are: Plaintiff and Counter-Defendant Govino, LLC ("Govino"), and Defendants and Counter-Plaintiffs Goverre, Inc. ("Goverre"), Reagan Kelaher, Shannon Zappala (collectively "Defendants").  Each of these parties has been served and has appeared.  All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are:

    (a)   Govino's Complaint and Demand for Jury Trial (Dkt. No. 1);

    (b)   Goverre's Answer and Affirmative Defenses (Dkt. No. 14);

    (c)   Goverre's Counterclaims Against Govino (Dkt. No. 15);

    (d)   Govino's Answer to Goverre's Counterclaims (Dkt. No. 20)

    (e)   Regan Kelaher's Answer to Govino's Complaint and Demand for Jury Trial (Dkt. No. 26);

    (f)   Shannon Zappala's Answer to Govino's Complaint and Demand for Jury Trial (Dkt. No. 27);

    (g)   Regan Kelaher's Counterclaims to Govino's Complaint and Demand for Jury Trial (Dkt. No. 28);

    (h)   Shannon Zappala's Counterclaims to Govino's Complaint and Demand for Jury Trial (Dkt. No. 29);

    (i)   Govino's Answer to Regan Kelaher's Counterclaims to Govino's Complaint and Demand for Jury Trial (Dkt. No. 48); and

      (j)     Govino's Answer to Shannon Zappala's Counterclaims to Govino's Complaint and Demand for Jury Trial (Dkt. No. 49).

2.    The parties do not contest federal jurisdiction or venue, which is invoked upon the following grounds:

      (a)     This court has federal jurisdiction over Plaintiff's Lanham Act claims for trademark infringement, trade dress infringement, and federal unfair competition and Defendants' counterclaims pursuant to 28 U.S.C. §§ 1131 and 1338(a)-(b), as well as under 28 U.S.C. §§ 2201 and 2202.

      (b)     This court has supplemental federal jurisdiction over Plaintiff's state law unfair competition claims under 28 U.S.C. §§ 1338(b) and 1367;

      (c)     Venue is proper under 28 U.S.C. § 1391(b)(2) because the alleged acts of infringement and unfair competition claimed by Plaintiff allegedly have occurred and are occurring in this district.

3.    The Court has allotted six (6) days for trial: April 9-11 and 16-18, 2019. Each day will be 5.75 hours of trial time, totaling 34.5 hours over the three days. This time will be divided equally between each side. This will include voir dire; opening; evidence presentation (including all examination, whether on direct or cross); and closing. This time limitation may be modified only upon a showing of good cause.

4.    The trial is to be a jury trial. Per the Court's Civil Trial Order of March 21, 2017, at least five court days prior to the final pretrial conference the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on *voir dire*.

5.    The following facts are admitted and require no proof: none.

6.     The following facts, though stipulated, shall be without prejudice to any evidentiary objection: none

7.  The following describes the claims and defenses to be presented at trial:

**PLAINTIFF**

(a)     Plaintiff plans to pursue the following claims against the following Defendants:

1.     Claim 1: Defendants have violated 15 U.S.C. § 1114 by willfully infringing Govino's registered trademarks.

2.     Claim 2: Defendants have violated 15 U.S.C. § 1125(a) by willfully infringing Govino's Trade Dress.

3.     Claim 4: Defendants have violated California Business & Professions Code § 17200, et seq. by committing acts of unfair competition.

4.     Claim 5: Defendants have violated California common law by committing acts of unfair competition.

5.     Claim 6: Defendants have violated 15 U.S.C. § 1125(a) by committing acts of unfair competition and false designation of origin.

(b)     The elements required to establish Plaintiff's claims are:

**Claim 1: Trademark Infringement Under 15 U.S.C. § 1114**

For Govino's trademark infringement claims, Govino must prove that:

1.     Govino's GOVINO and GO ANYWHERE ("Asserted Trademarks") are valid and protectible;

2.     Govino owns Govino's Asserted Trademarks; and

3.     Defendants used the GOVERRE and ANY WINE. ANY TIME. marks ("Accused Marks"), which are similar to Govino's Asserted Trademarks without the consent of Govino in a manner

3

that is likely to cause confusion among ordinary purchasers, and the relevant public, as to the source, sponsorship, affiliation, or approval of the parties' goods. *See* Ninth Circuit Model Civil Jury Instruction 15.6 (2017).

The Ninth Circuit has identified eight relevant factors for determining the likelihood of consumer confusion for trademark and trade dress infringement claims: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *See* Ninth Circuit Model Civil Jury Instruction 15.18 (2017).

## Claim 2: Trade Dress Infringement Under 15 U.S.C. § 1125(a)

For Govino's Trade Dress infringement claim, Govino must show:

1. Govino's oval notched indent in the sidewall of its products ("Asserted Trade Dress") is distinctive;

2. Govino owns the Asserted Trade Dress;

3. Govino's Asserted Trade Dress is nonfunctional; and

4. Plaintiff maintains that Defendants used a trade dress similar to the Asserted Trade Dress without the consent of Govino in a manner that is likely to cause confusion among ordinary consumers, or the relevant public, as to the source, sponsorship, affiliation, or approval of parties' good. *See* Ninth Circuit Model Civil Jury Instructions 15.7 (2017).

Govino must show that the Asserted Trade Dress is distinctive by showing that it has acquired secondary meaning. The Ninth Circuit considers the following seven factors in the secondary meaning analysis: (1) consumer perception and association of the trade dress with the owner; (2) degree and manner of

advertisement by the trade dress owner; (3) success in using the trade dress to increase product sales; (4) length of time and manner in which the owner used the trade dress; (5) exclusivity of use of the trade dress; (6) copying of the trade dress by the defendants; and (7) actual confusion.  *See* Ninth Circuit Model Civil Jury Instruction 15.11 (2017).

Govino must show that the Asserted Trade Dress is nonfunctional.  *See Sega Enterprises Ltd., v. Accolade, Inc.*, 977 F.2d 1510, 1530-31 (9th Cir. 1992).  The Ninth Circuit typically considers the following four factors in the functionality analysis: (1) the design's utilitarian advantage; (2) availability of alternate designs; (3) advertising utilitarian advantage in the design; and (4) the design's method of manufacture.  *See* Ninth Circuit Model Civil Jury Instruction 15.12 (2017).  If features of the Asserted Trade Dress are functional, Govino must show that the features are combined together in a nonfunctional way to avoid finding of functionality.  *See HWE, Inc. v. JB Research, Inc.*, 993 F.2d 694, 696 (9th Cir. 1993).

## Claim 4: California Statutory Unfair Competition

For Govino's statutory unfair competition claim under Cal. Bus. & Prof. Code § 17200 *et seq.*, Govino must prove that:

1. Defendants have engaged in an unlawful, unfair, or fraudulent business act or practice, and/or any unfair, deceptive, untrue, or misleading advertising.

*See* Cal. Bus. & Prof. Code § 17200.  If Defendants have engaged in trademark infringement, trade dress infringement, or federal unfair competition, they have also engaged in California statutory unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.  Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1084 n.1 (9th Cir. 1998).

## Claim 5: California Common Law Unfair Competition

If Defendants have engaged in trademark infringement, trade dress

infringement, or federal unfair competition, they have also engaged in California common law unfair competition. *Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1084 n.1 (9th Cir. 1998).

## Claim 6: Federal Unfair Competition

For Govino's claim of federal unfair competition, Govino must establish the following elements by a preponderance of the evidence:

1. Plaintiff maintains that Goverre, on or in connection with its goods, used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin;

2. Plaintiff asserts that Goverre's actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Goverre with Govino, or as to the origin, sponsorship, or approval of Goverre's goods, services, or commercial activities by Govino; and

3. Govino believes it was likely to be damaged by Goverre's actions.

*See* 15 U.S.C. § 1125(a).

(c)     In brief, the key evidence Plaintiff relies on for each of the claims is:

## Claim 1: Trademark Infringement Under 15 U.S.C. § 1114

### 1.  Validity and Ownership of Govino's Asserted Trademarks

The certificates of registration for Govino's Asserted Trademarks are evidence of the validity of the marks and of Govino's exclusive right to use the marks on or in connection with the goods listed in the registrations. 15 U.S.C. § 1115. Further, Govino's registration no. 3,586,708 is incontestable, and therefore provides conclusive proof of the validity of the mark.

Plaintiff alleges that Govino witness testimony and documentary evidence,

including website screenshots and product catalogs, establishes that Govino and its predecessor company, By The Glass, LLC, have continuously used the Asserted Trademarks in commerce.

Plaintiff asserts that the certificates of registration, combined with the assignments, prove that ownership of the Asserted Trademarks and related goodwill flowed from By the Glass, LLC to Govino, LLC.

Plaintiff further asserts that Govino's industry recognition, design awards, media recognition, advertising, trade show activities, festival sponsorship, and marketplace success further establish that Govino's Asserted Trademarks are valid and protectable.

## 2. Defendants' Infringement

Plaintiff alleges that each factor of the Sleekcraft test weighs in favor of a finding of a likelihood of confusion.

### a) Govino maintains that Its Asserted Trademarks are Strong

Govino's Asserted Trademarks are commercially strong:

- The industrial design awards related to the design of Govino's products;
- The display of the GOVINO Wine Glass and GOVINO 4-Pack Tote at the seminal Design Exhibition "How Wine Became Modern" at the San Francisco Museum of Modern Art;
- The display of GOVINO products in numerous popular TV shows, movies, newspapers, and websites;
- Govino's print media and social media advertising;
- Govino's presence at trade shows;
- Govino's sponsorship of music and wine/food festivals, such as Coachella, Outside Lands, and e Robert Mondavi Discover Wine Tour;
- The GOVINO products ranking as top-selling products on Amazon.com;

- Govino's exposure through co-branding with other famous brands, including American Express, Lexus, Audi, Citibank, America's Cup, and the Kentucky Derby;

Govino Alleges that its Asserted Trademarks are conceptually strong:

- GOVINO is an inherently distinctive made-up word;
- GO ANYWHERE is an inherently distinctive slogan associated with Govino's products.

### b) Govino Asserts that Govino's and Goverre's Wine Glasses Are Similar

- Product samples of Govino and Goverre wine glasses;
- Marketing materials and website screenshots depicting Govino and Goverre wine glasses.

### c) Govino Alleges that Govino's Asserted Trademarks are Similar to the Accused Trademarks

- Govino's linguistic expert witness, Dr. Ronald Butters, will testify to the numerous similarities in the sight, sound, and meaning of GOVINO and GOVERRE.
- Goverre's ANY WINE. ANY TIME. and Govino's GO ANYWHERE taglines are confusingly similar.

### d) Govino Maintains that There is Evidence of Actual Confusion

- Numerous current and former Govino employees will testify that they have been approached by customers at trade shows, industry events, and social settings, who were confused between GOVINO and GOVERRE.

### e) Govino Asserts that Defendants Willfully and Intentionally Infringed and Continue to Infringe on Govino's Trademarks

Evidence of Defendants' willful infringement includes the following:

- Zappala's knowledge of GOVINO dating back to 2010, three years prior to the founding of Goverre;
- John Greer, Govino's branding consultant, participated in Goverre's early business meetings, coinciding with Defendants' decision to make an on-the-go wine glass;
- Goverre's meeting minutes, inventor notebook, pitch decks repeatedly mention GOVINO and confirm that GOVINO was a mantra throughout the Defendants' development of GOVERRE;
- Defendants' CAD drawings show that they reverse-engineered the Govino wine glass dimensions when designing the GOVERRE wine glass;
- Greer lied to Govino by stating that Goverre was on "indefinite hold" even as he was providing Goverre with business advice and investing money in Goverre;
- Greer and Zappala intentionally misled Govino into thinking that Goverre had been abandoned.

**f)  Govino will Demonstrate that Govino and Goverre Share Many Marketing Channels**

Govino will introduce the following evidence to establish that Govino and Goverre sell their products through many of the same online and brick-and-mortar stores:

- The Goverre website store locator list of stores;
- Govino's sales spreadsheets, including a list of Govino customers;
- Screenshots of various online stores;
- Govino and Goverre documents related to marketing channels.

**g)  Govino Asserts that Govino and Goverre Wine Glasses are Inexpensive**

Govino will present the following evidence to establish that Govino's and

Goverre's wine glasses are relatively inexpensive:

- Screenshots of various online stores
- Govino product brochures
- Goverre marketing materials

### h) Govino Alleges that Govino's and Goverre's Product Lines Have Expanded To Become More Similar

Product line expansion by both Govino and Goverre since the filing of the lawsuit weighs in favor of a finding of a likelihood of confusion:

- Goverre expanded its product line to introduce the CLAIR wine glass that uses clear glass rather than the opaque glass of the original GOVERRE;
- Govino expanded its product line to introduce the colorful jewel tone wine glasses.

There is every reason to believe this trend will continue.

## Claim 2: Trade Dress Infringement Under 15 U.S.C. § 1125(a)

### 1. Plaintiff Maintains that Govino's Asserted Trade Dress is Distinctive

- Testimony of Govino employees related to consumer recognition of Govino via the Asserted Trade Dress, media recognition for the Asserted Trade Dress, and industry and design awards for the Asserted Trade Dress;
- Documents evidencing Govino's industry and design awards;
- Documents evidencing media recognition for Govino's products;
- Documents evidencing Govino's advertising and partnerships.

### 2. Govino Asserts that Govino Owns the Asserted Trade Dress

- Testimony from Govino employees, Defendants, and third parties related to Govino's use of the Asserted Trade Dress and consumer recognition of Govino via the Asserted Trade Dress;

- Documents evidencing Govino's use of the Asserted Trade Dress as trade dress, including advertising and website screenshots.

### 3. Govino Maintains that its Asserted Trade Dress is Not Functional

- Testimony from Govino employees that (a) the Asserted Trade Dress serves to distinguish Govino's products from other wine glasses on the market, (b) that the Asserted Trade Dress does not result from a simple or inexpensive method of manufacture;
- Pictures showing the Asserted Trade Dress on Govino's entire product line, including the champagne flute, whisky glass, beer glass, and decanter.

### 4. Defendants' Alleged Infringement

- Product samples of Govino and Goverre wine glasses;
- Marketing materials and website screenshots depicting Govino and Goverre wine glasses.
- Other evidence presented to establish trademark infringement under Claim 1

## Claim 4: California Statutory Unfair Competition

Govino will rely on the same evidence described above in connection with Claims 1 and 2.

## Claim 5: California Common Law Unfair Competition

Govino will rely on the same evidence described above in connection with Claims 1 and 2.

## Claim 6: Federal Unfair Competition

Govino will rely on the same evidence described above in connection with Claims 1 and 2.

## DEFENDANTS

(a)     Defendants plan to pursue the following counterclaims, affirmative defenses, and requests for relief:

## Counterclaims:

11

1.      Counterclaim 1: Defendants allege that Govino's trademarks and trade dress are not famous as required by 15 U.S.C. §1125(c) and further that Goverre has not diluted Govino's trademarks and trade dress *(Court previously granted Defendants' motion for summary judgment as to Govino's federal dilution claim).*

2.      Counterclaim 2: Defendants allege that the trade dress asserted by Govino is merely functional and not entitled to any protection and further that Goverre has not infringed any protectable trade dress interest of Govino or otherwise violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(a) or Cal. Bus. & Prof. Code § 17200 *et seq.*

**Affirmative Defenses:**

3.      Defense 1: Defendants allege that Govino's alleged trade dress is not valid because it is functional.

4.      Defense 2: Defendants allege that Govino's trade dress is not inherently distinctive and has not acquired distinctiveness.

5.      Defense 3: Defendants allege that Govino's trade dress has not acquired secondary meaning.

6.      Defense 4: Defendants allege that Govino has failed to mitigate any alleged damages.

7.      Defense 5: Defendants allege that Govino's claims are barred by equitable estoppel.

8.      Defense 6: Defendants allege that Govino's claims are barred by laches and acquiescence.

9.      Defense 7: Defendants allege that Govino is barred from injunctive relief due to unnecessary delay.

10.     Defense 8: Defendants allege that their reliance on the pre-suit opinions of counsel and the opinions are reasonable such that

there is no willful infringement as asserted by Govino.

**Request for Relief:**

**Exceptional Case:** Defendants maintain that this is an exceptional case in Defendants' favor entitling Defendants under 15 U.S.C. § 1117(a) to recover their reasonable attorney's fees and costs.

(b)    The elements required to establish Defendants' counterclaims and affirmative defenses are:

**Counterclaim 1: Defendants allege that Govino's trademarks and trade dress are not famous and its trademark dilution claim cannot stand as a matter of law**

In order to prevail on its counterclaim for a declaratory judgment of lack of famous status/no dilution, Defendants need only show that Govino has not met its burden of showing its trademarks and trade dress cannot meet the "famous" standard under 15 U.S.C. §1125(c).  This Court previously made that determination in its Order Granting In Part And Denying In Part Defendants' Motion For Partial Summary Judgment [Doc. 113].  Accordingly, judgment in Defendants' favor is entered in this claim.

**Counterclaim 2: Defendants allege that Govino lacks protectable trade dress.**

In order to prevail on its counterclaim for a declaratory judgment of lack of protectable trade dress or infringement, Defendant need only show that (1) Plaintiff cannot meet its burden of proving that the alleged trade dress is nonfunctional or (2) Plaintiff cannot meet its burden of proving that the accused Goverre products (Goverre and Claire) infringe Govino's claimed trade dress or that the trade dress is protectable.

Goverre alleges that Govino's trade dress is functional and, therefore, not protectable. The party asserting trade dress protection has the burden of proving that the matter sought to be protected is not functional. 15 U.S.C. §1125(a)(3). "The

13

requirement of nonfunctionality is based 'on the judicial theory that there exists a fundamental right to compete through imitation of a competitor's product, which right can only be temporarily denied by the patent or copyright laws.'" *Adidas-Salomon Ag v. Target Corp.,* 228 F. Supp. 2d 1192, 1202-1203 (Dist. Or. 2002) (quoting *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1011-12 (9th Cir 1999)). This requirement is designed to encourage competition and the broadest dissemination of useful design features. "Functional features of a product are features which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." *Adidas-Salomon Ag v. Target Corp.,* 228 F. Supp. 2d 1192, 1202 (Dist. Or. 2002) (quoting R*achel v. Banana Republic, Inc.,* 831 F.2d 1503, 1506 (9th Cir 1987) (internal quotation marks and citation omitted)). Functionality is a question of fact on which the plaintiff in an infringement action bears the burden of proof. *Id.* (citing *Clicks Billiard, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001)); *HWE, Inc. v. JB Research, Inc*., 993 F.2d 694, 696 (9th Cir. 1993) (citing *Rachel*, 831 F.2d at 1506).

Similarly, evidence that the proposed trade dress is the subject of a utility patent that discloses the utilitarian advantages of the configuration at issue can be sufficient in itself to support a finding of functionality. *TrafFix Devices, Inc. v. Mktg. Displays, Inc*., 532 U.S. 23, 29-33 (2001) ("A utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong evidence of functionality based on the previous patent adds great weight to the statutory presumption . . . one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional").

## Defense 1: Defendants allege that Govino's alleged trade dress is not valid because it is functional.

Defendants intend to rely on similar evidence and legal argument as presented

1  for Counterclaim 2 above.

2  **Defense 2: Defendants allege that Govino's trade dress is not inherently**

3  **distinctive and has not acquired distinctiveness.**

4  Goverre alleges that Govino cannot establish that its alleged trade dress—the

5  oval thumb notch in the side of the glass—is inherently distinctive. Generic product

6  configurations or designs regarded by the public as the basic form of a particular item

7  are not protectable even upon a showing of secondary meaning. *See Nicole, Inc. v.*

8  *B.L.K. Int'l, Inc.,* 2015 U.S. Dist. LEXIS 187616 at *6-7 (C.D. Cal. June 25, 2015),

9  *citing Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619,

10  639 (6th Cir. 2002). Trade dress law does not protect such a generalized type of

11  appearance. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 32 (2d

12  Cir. 1995); *Big Island Candles, Inc. v. Cookie Corner,* 269 F. Supp. 2d 1236, 1243-

13  44 (D. Hawaii 2003) (design is generic if so common in the relevant industry that it is

14  incapable of serving to identify any one particular source). Similarly, evidence that

15  the proposed mark is the subject of a utility patent that discloses the utilitarian

16  advantages of the configuration at issue can be sufficient in itself to support a finding

17  of functionality. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 33 (2001).

18  **Defense 3: Defendants allege that Govino's trade dress has not acquired**

19  **secondary meaning.**

20  The basic element of secondary meaning is the mental association by a

21  substantial segment of consumers and potential consumers "between the alleged

22  mark and a single source of the product." 1 J. McCarthy, §§ 15:2 at 659, and

23  15:11(B) at 686. *See Blue Bell I*, 632 F.2d at 820. In order to establish secondary

24  meaning, Govino must demonstrate that actual purchasers of its products associate

25  the trademark/trade dress with Govino. Secondary meaning necessarily requires

26  exclusivity. *See Filipino Yellow Pages v. Asian Journal Publications,* 198 F.3d 1143,

27  1151 (9th Cir. 1999).  Moreover, generic product configurations or designs regarded

28  

15

by the public as the basic form of a particular item are not protectable even upon a showing of secondary meaning. *See Nicole, Inc. v. B.L.K. Int'l, Inc.,* 2015 U.S. Dist. LEXIS 187616 at *6-7 (C.D. Cal. June 25, 2015), *citing Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 639 (6th Cir. 2002) and *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 32 (2d Cir. 1995).

**Defense 4: Defendants allege that Govino has failed to mitigate any alleged damages.**

The doctrine of mitigation of damages holds that a plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided. A plaintiff may not recover for damages avoidable through ordinary care and reasonable exertion. *See Valle de Oro Bank v. Gamboa*, 26 Ca. App. 4th 1686, 1691, 32 Cal. Rptr. 2d 329 (1994). A plaintiff has a duty to mitigate damages and cannot recover losses it could have avoided through reasonable efforts. *Shaffer v. Debbas*, 17 Cal.App.4th 33, 41, 21 Cal. Rptr. 2d 110 (1993). One has an obligation to avoid an unwarranted enhancement of damages "through passive indifference or stubborn insistence upon a conceived legal right …." *Id*. (quoting *Green v. Smith*, 261 Cal.App.2d 392, 398-399, 67 Cal. Rptr. 796 (1968)).

**Defense 5: Defendants allege that Govino's claims are barred by equitable estoppel.**

The essential elements of estoppel are: (1) ignorance of the party claiming estoppel of the matter asserted; (2) silence concerning matter where there is a duty to speak amounting to misrepresentation or concealment of a material fact; (3) action by the party relying on the misrepresentation or concealment; and (4) damages resulting if the estoppel is denied. *See Brother Records, Inc. v. Jardine*, 318 F.3d

900 (9ᵗʰ Cir. 2003), citing *Kierulff v. Metro. Stevedore Co.,* 315 F.2d 839, 842 (9ᵗʰ Cir. 1963).

**Defense 6: Defendants allege that Govino's claims are barred by laches and acquiescence.**

The Ninth Circuit has applied laches to bar trademark infringement claims "where the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time." *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 (9th Cir. 2003) (quoting *Goto.com, Inc. v. Walt Disney Co.,* 202 F.3d 1119, 1209 (9th Cir. 2000)). Laches can also bar a petition for cancellation of a trademark registration. *See Pinkette Clothing, Inc. v. Cosmetic Warriors, Ltd.,* 894 F.3d 1015 (9th Cir. 2018).

**Defense 7: Defendants allege that Govino is barred from injunctive relief due to unnecessary delay.**

A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co*., 762 F.2d 1374, 1377 (9th Cir. 1985); *Groupion, LLC v. Groupon, Inc*., 826 F. Supp. 2d 1156, 1167 (N.D. Cal. 2011) ("Groupion's delay in moving for an injunction undermines implies a lack of urgency and, thus, further undermines the need for a preliminary injunction"); *see also Lydo Enters. v. Las Vegas,* 745 F.2d 1211, 1213 (9th Cir. 1984) (denying injunctive relief because Lydo delayed five years before taking any action which, if commenced sooner, might have avoided the threat of immediate closure). Despite its allegations of "ongoing" and "irreparable" harm, dating back to 2014, Govino failed to contact counsel regarding the matter until April 2017 and served no cease and desist letter on Goverre until May 2017. To date, Govino still has not sought temporary injunctive relief and its corporate representative was wholly unable to provide any explanation for the delay.

**Defense 8: Defendants allege that their reliance on the pre-suit opinions of**

1  <u>**counsel and the opinions are reasonable such that there is no willful**</u>
2  <u>**infringement as asserted by Govino.**</u>

3       In order to prevail on its claim of willful infringement, Govino must establish
4  that defendants acted willfully by showing that: (1) defendants intentionally used the
5  marks knowing they were infringing; or (2) defendants "willfully blinded"
6  themselves to facts that should have put them on notice that they were selling
7  counterfeit goods and infringing plaintiffs' trademarks.[2] "Willful [misconduct]
8  carries a connotation of deliberate intent to deceive. Courts generally apply forceful
9  labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets
10  this standard." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993);
11  *National Lead Co. v. Wolfe*, 223 F.2d 195, 205-06 (9th Cir. 1955), cert. denied, 350
12

13  [2] *See Herman Miller, Inc. v. Alphaville Design, Inc.*, No. C 08-03437 WHA, 2009
14  U.S. Dist. LEXIS 103384, 2009 WL 3429739, *9 (N.D. Cal. Oct. 22, 2009) ("Willful
15  infringement occurs when the defendant knowingly and intentionally infringes on a
    trademark," (citing *Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210,
16  1216-17 (9th Cir. 2003))); *Philip Morris USA, Inc. v. Liu*, 489 F.Supp.2d 1119, 1123
17  (C.D. Cal. 2007) ("Willfulness can be established by evidence of knowing conduct
    or by evidence that the defendant acted with 'an aura of indifference to plaintiff's
18  rights'—in other words, that the defendant willfully blinded himself to facts that
19  would put him on notice that he was infringing another's trademarks, having cause
    to suspect it" (citation omitted)); *Chanel, Inc. v. Doan*, No. C 05 03464 VRW, 2007
20  U.S. Dist. LEXIS 22691, 2007 WL 781976, *4 (N.D. Cal. Mar. 13, 2007) ("'Willful
21  infringement carries a connotation of deliberate intent to deceive.' Whether
    defendants acted willfully or with bad faith 'require[s] a connection between [the]
22  defendant[s'] awareness of its competitor[s] and its actions at those competitors'
23  expense,'" (quoting *Lindy Pen Co., Inc. v. Bic Pen Corp*., 982 F.2d 1400, 1406 (9th
    Cir. 1993)) (alterations in original)); *Philip Morris USA Inc. v. Banh*, No. CV 03-
24  4043 GAF (PJWx), 2005 U.S. Dist. LEXIS 43113, 2005 WL 5758392, *6 (C.D. Cal.
25  Jan. 14, 2005) ("Willfulness under [15 U.S.C. § 1117(c)] has been interpreted to
    mean a 'deliberate and unnecessary duplicating of a plaintiff's mark  in a way that
26  was calculated to appropriate or otherwise benefit from the good will the plaintiff
27  had nurtured' or 'an aura of indifference to plaintiff's rights,'" (citing *SecuraComm
    Consulting Inc. v. Securacom, Inc*., 166 F.3d 182, 187 (3d Cir. 1999)).
28

U.S. 883, 76 S. Ct. 135, 100 L. Ed. 778 (1955)(recovery of profits were only allowed when there was unfair competition based on a deliberate and intentional design to cause confusion by false advertising).

A finding of willful misconduct under the Lanham Act must be supported by clear and convincing evidence. *CollegeNET, Inc. v. XAP Corp.,* 483 F. Supp. 2d 1058, 1065 (Dist. Or. 2007). The Ninth Circuit has cautioned that a showing of willful misconduct does not compel an award of profits, which reflects the equitable nature of the remedy. *Faberge, Inc. v. Saxony Prods., Inc.,* 605 F. 2d 426 (9th Cir. 1979).

Moreover, and importantly, in the Ninth Circuit, a defendant's reliance on the advice of counsel is relevant and usually dispositive of the question of willfulness. *Columbia Picture Television, Inc. v. Krypton Broad. of Birmingham,* 259 F.3d 1186, 1196 (9th Cir. 2001); *Chiron Corp. v. Genentech, Inc.,* 268 F. Supp. 2d 1117, 1121 (E.D. Cal. 2002). Generally, obtaining the advice of counsel negates a finding of willfulness unless the advice is ignored or is found to be incompetent. *Chiron Corp. v. Genentech, Inc.,* 268 F. Supp. 2d 1117, 1121 (E.D. Cal. 2002).

**Request for Relief:  Defendants maintain that this is an exceptional case in Defendants' favor and Defendants are entitled to recovery reasonable attorney's fees and costs.**

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorneys fees to the prevailing party." 15 U.S.C. § 1117(a). The Ninth Circuit has held that "[e]xceptional circumstances can be found when the non-prevailing party's case is groundless, unreasonable, vexatious, or pursued in bad faith." *Gracie v. Gracie,* 217 F.3d 1060, 1071 (9th Cir. 2000). This standard for exceptional circumstances applies to prevailing defendants as well as prevailing plaintiffs under the Lanham Act. *Id.* (citing *Stephen W. Boney, Inc. v. Boney Servs., Inc.,* 127 F.3d 821, 827 (9th Cir. 1997)). Defendants maintain that this case is

exceptional, in favor of Defendants, on the basis that Govino's claims are groundless, unreasonable, and pursued in bad faith.

- The particularly high burden required to demonstrate "fame" necessary to a trademark dilution claim is well-settled in federal law. Yet, Govino "produced almost no evidence tending to show that the marks are *widely* known across the general consuming public." *See* Minutes from Summary Judgment Hearing dated November 20, 2018 [Dkt. No. 113].

- Likewise, since all of Govino's utility patents describe the functionality of the thumb notch—and even claim it as a patentable feature—the thumb notch is functional as a matter of law. There is no good faith basis for maintaining a trade dress claim when non-functionality is a necessary element.

- Moreover, Govino has no good-faith basis for maintaining its trade dress claim given the clear absence of infringement and the numerous third-party products on the market, which preclude the requisite elements of inherent distinctiveness and secondary meaning. The absence of survey evidence confirms the frivolity of this claim.

(c) In brief, the key evidence Defendants rely on for each counterclaim and affirmative defense is:

**Counterclaim 1: Defendants allege that Govino's trademarks and trade dress are not famous and its trademark dilution claim cannot stand as a matter of law**

- Govino's lack of any survey evidence and other evidence supporting fame within 15 U.S.C. §1125(c).

- The Court's Order Granting In Part And Denying In Part Defendants' Motion For Partial Summary Judgment [Doc. 113].

- Testimony of Defendants Regan Kelaher and Shannon Zappala

**Counterclaim 2: Defendants allege that Govino lacks protectable trade dress.**

Defendants will introduce evidence that Govino's claimed trade dress is functional and not infringed:

- Govino's Patent No. 8,567,635 (Perrulli Depo. Ex. 131) describes the function of the thumb notch several times. The function of the notch is actually part of claims 1 and 17.

- Govino's Patent No. 7,886,924 (Perrulli Depo. Ex. 132) also describes the function of the thumb notch in the specification.

- Govino's Patent No. 7,273,147 (Perrulli Depo. Ex. 133) describes the function of the thumb notch similarly in the specification and in three of the patent's claims.

- Govino's Patent No. 8,875,935 (Perrulli Depo. Ex. 134) includes the functional thumb notch throughout the specification and in *seven* of the patent's claims.

- Govino's representative Keiko Nicollini demonstrates functionality of the thumb notch.

- Govino's product, packaging, marketing, website, and advertising emphasize the functionality of the thumb notch.

- Govino's product and Goverre's product (Govino and Clair)

- Testimony of Govino executives and Rule 30(b)(6) representatives and former executives demonstrating functionality.

- Testimony of Defendants Regan Kelaher and Shannon Zappala

- The evidence at trial will show that there are countless wine glasses on the market that incorporate some type of thumb-notch design.

- Govino's alleged trade dress is merely a refinement of a common and utilitarian design and glass shape that have long been associated with wine glasses.

**Defense 1: Defendants allege that Govino's alleged trade dress is not valid because it is functional.**

Defendants intend to rely on similar evidence as presented for Counterclaim 2.

**Defense 2: Defendants allege that Govino's trade dress is not inherently distinctive and has not acquired distinctiveness.**

Defendants will introduce evidence that Govino's claimed trade dress is not inherently distinctive and has not acquired distinctiveness:

- Testimony of Govino executives and Rule 30(b)(6) representatives and former executives demonstrating functionality
- Goverre's pleadings and discovery responses and financial documents
- Testimony of Defendants' attorney Molly Buck Richard and opinion letter to Goverre, July 2017
- Govino's utility patents describing the function of the thumb notch
- Video of Govino's Representative Keiko Nicollini
- Govino's product, packaging, marketing, website, and advertising emphasize the functionality of the thumb notch.
- Third-party products with thumb notches
- Testimony of Defendants Regan Kelaher and Shannon Zappala
- Govino's cease and desist letter to Goverre, June 2017, and response
- Govino's alleged trade dress is merely a refinement of a common and utilitarian design and glass shape that have long been associated with wine glasses.
- Govino's own representative, as well as its product packaging, marketing, website, and advertising emphasize the functionality of the thumb notch.

**Defense 3: Defendants allege that Govino's trade dress has not acquired secondary meaning.**

- Govino cannot carry its burden of establishing secondary meaning in light of the complete absence of any consumer or market survey evidence combined

with the absence of exclusivity given the existence of numerous third-party products bearing the same general thumb-notch design.

- Govino's claim of "trade dress" as to the generalized appearance (shape and patented thumb-notch) of its stemless wine glass is an attempt to claim trade dress protection for the generalized appearance regarded by the public (and shown in the market) as the basic form for stemless wine glasses, particularly those promoted in marketing channels aimed at the wine industry and wine professionals in particular and is not entitled to protection even upon a showing of secondary meaning.

- Molly Buck Richard opinion letter to Goverre, July 2017 and testimony

- Testimony of Plaintiff's executives, Rule 30(b)(6) representatives and former executives

- Testimony of Defendants Regan Kelaher and Shannon Zappala

- Govino's Utility Patents describing the function of the thumb notch

- Govino's product and third-party products

- Govino's financial and advertising documents

- Govino cease and desist letter to Goverre, June 2017

**Defense 4: Defendants allege that Govino has failed to mitigate any alleged damages.**

- Govino was aware of Goverre's name, products, and mark at least as early as January 2014, yet Govino waited over three years before even sending a cease and desist letter.

- Govino did not contact Defendants at any time from 2014 to May 2017 regarding what it considered to be a "potential" naming issue.

- Despite its allegations of "ongoing" and "irreparable" harm dating back to 2014, Govino failed to contact counsel regarding the matter until April 2017.

- Govino filed no opposition to Goverre's trademarks during the opposition

period.

- Govino served no cease and desist letter on Goverre until May 2017.
- Testimony of Plaintiff's executives, Rule 30(b)(6) representatives and former executives
- Govino's pleadings and discovery responses, including but not limited to Exhibits N-T to Govino Complaint showing early Govino awareness of Goverre
- Testimony of Defendants Regan Kelaher and Shannon Zappala
- Registrations for Goverre's trademarks GOVERRE (Registration No. 4,765,018) and ANY WINE. ANY TIME. (Registration No. 4,818,372) filed with the United States Patent and Trademark Office and registered on the Principal Register
- Emails from Govino executives and owners in January and February 2014 representing that the products were markedly different and only a remote chance of infringement coupled with silence and inaction for four years
- Email chain from Jeff Conner in early 2014
- Govino cease and desist letter to Goverre, June 2017
- Documents and testimony from Govino showing no damages

**Defense 5: Defendants allege that Govino's claims are barred by equitable estoppel.**

- Goverre was ignorant of Govino's infringement allegations made in 2017;
- Govino was silent even in the face of express knowledge of Goverre's trademarks and products, essentially conveying to Goverre a complete lack of infringement and/or concealing Govino's allegations of infringement;
- Goverre relied on express representations by Govino's Joseph Perrulli in which Perrulli identified only a "remote chance of infringement" between Govino and Goverre because the products are "markedly different;" and

- if Govino is allowed to prevail on its infringement claims after remaining intentionally silent for many years, Goverre will suffer damages arising out of the creation, marketing and sale of Goverre products that could have been avoided had Govino's timely alerted Goverre as to its claims.
- Testimony of Plaintiff's executives, Rule 30(b)(6) representatives and former executives
- Govino's pleadings and discovery responses, including but not limited to Exhibits N-T to Govino Complaint showing early Govino awareness of Goverre
- Testimony of Defendants Regan Kelaher and Shannon Zappala
- Emails from Govino executives and owners in January and February 2014 representing that the products were markedly different and only a remote chance of infringement coupled with silence and inaction for four years
- Email chain from Jeff Conner in early 2014
- Govino cease and desist letter to Goverre, June 2017

**Defense 6: Defendants allege that Govino's claims are barred by laches and acquiescence.**

Goverre will rely on the same evidence described above in connection with Defense 4 as well as:

- Although Govino seems to infer that its communications with John Greer prior to the filing of this lawsuit somehow constituted direct notice of its claims to Defendants, John Greer is not Goverre's agent, is not employed by Goverre, and has no authority to act on behalf of Goverre.

**Defense 7: Defendants allege that Govino is barred from injunctive relief due to unnecessary delay.**

Goverre will rely on the same evidence described above in connection with Defenses 4 and 5.

**Defense 8: Defendants allege that their reliance on the pre-suit opinions of counsel and the opinions are reasonable such that there is no willful infringement as asserted by Govino.**

Goverre will rely on the same evidence described above plus:

- Legal opinion and testimony of Marco Gonzalez
- Legal opinion and testimony of Molly Buck Richard
- Testimony of Regan Kelaher and Shannon Zappala
- U.S. Patent and Trademark Office records related to GOVERRE and ANY WINE. ANY TIME.

**Request for Relief: Defendants maintain that this is an exceptional case in Defendants' favor and Defendants are entitled to recovery reasonable attorney's fees and costs.**

Goverre will rely on the same evidence above in connection with the Counterclaims and Defenses.

8.   In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

(a)   Whether Defendants have infringed Govino's GOVINO and GO ANYWHERE registered trademarks;

(b)   Whether Defendants have infringed Govino's Trade Dress;

(c)   Whether Defendants committed unfair competition;

(d)   Whether Defendants infringement or unfair competition was willful;

(e)   Whether the Defendants' infringement or unfair competition was conducted with malice, oppression, or fraud;

(f)   The amount of damages owed Govino, as measured by Goverre's profits;

(g)     The amount of punitive damages owed Govino;

(h)     Whether Govino is entitled to attorneys' fees and costs, and, if so, in what amount;

(i)     Whether to permanently enjoin Defendants from infringing Govino's trademarks and trade dress and from unfairly competing;

(j)     Whether Govino's claims are barred by laches and acquiescence;

(k)     Whether to enhance the damages amount up to three times for Goverre's willful infringement of Govino's trademarks or trade dress as authorized by 15 U.S.C. § 1117(a);

(l)     Whether to disgorge Goverre's profits from its founding to the date of judgment;

(m)     Whether Defendants are entitled to judgment on their counterclaim that Govino's trade dress functional and not infringed;

(n)     Whether Govino's alleged trade dress is functional and, therefore, not protectable;

(o)     Whether Govino's trade dress is inherently distinctive or has acquired distinctiveness;

(p)     Whether Govino's trade dress has not acquired secondary meaning;

(q)     Whether Govino has failed to mitigate any alleged damages;

(r)     Whether Govino's claims are barred by equitable estoppel;

(s)     Whether Govino is barred from injunctive relief due to unnecessary delay;

(t)     Whether Defendants' reliance on the pre-suit opinions of counsel and the opinions are reasonable such that there is no willful infringement as asserted by Govino;

(u)     Whether this is an exceptional case in Defendants' favor under the Lanham Act, 15 U.S.C. § 1117(a);

(v)     Whether Govino's claim for damages should be limited to those provided for under the Lanham Act, 15 U.S.C. § 1117(a);

(w)     Whether Govino conceded no damages on its California state law claims;

(x)     Whether Govino can carry the burden required for recovery of Defendants' profits;

(y)     Whether Govino can recover disgorgement of Goverre's profits;

(z)     Whether Govino presented evidence of "irreparable harm" sufficient to support its claim for injunctive relief; and

(aa)    Whether Goverre is entitled to attorneys' fees and costs, and, if so, in what amount.

9.   All discovery is complete, except that Goverre has requested the limited deposition of Keiko Niccollini regarding a recent video that was published after the close of discovery and will supplement Goverre's financials. Subject to the Court's approval, Govino reserves the right to introduce evidence of new instances of confusion that occur before trial.

10.  In accordance with the Court's Civil Trial Order, the parties filed a joint exhibit list on January 25, 2019. The parties provided objections to such exhibits concurrently with the joint exhibit list along with disclosures required by F.R.Civ.P. 26(a)(3).

11.  The parties filed a joint witness list with the Court on January 25, 2019, as specified in the Court's Civil Trial Order. Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment). Presently, the parties intend to present all witnesses via live testimony.  In the event an intended trial witness identified in the witness lists becomes unavailable or evades a trial subpoena, the parties have agreed to provide

28

deposition designations in accordance with L.R. 16-2.7 and lodge the
depositions with the Clerk as required by L.R. 32-1 before trial.

12. The following law and motion matters and motions in limine, and no others,
are pending or contemplated:

Govino's Motions:

 (a) Govino's Motion in Limine No. 1 to exclude certain
   tweets was GRANTED at the Final Pretrial Conference;

 (b) Govino's Motion in Limine No. 2 to exclude the
   untimely produced documents at GOV_9199-9223 was
   DENIED at the Final Pretrial Conference; and

 (c) Govino's Motion in Limine No. 3 to exclude certain
   evidence regarding USPTO Proceedings was GRANTED
   IN PART AND DENIED IN PART at the Final Pretrial
   Conference.

Goverre's Motions:

 (a) Goverre's Motion in Limine No. 1 to exclude documents
   and testimony of witnesses untimely disclosed or
   produced to defendants was DENIED at the Final Pretrial
   Conference;

 (b) Goverre's Motion in Limine No. 2 to exclude plaintiff's
   evidence of actual purported consumer confusion was
   DENIED at the Final Pretrial Conference;

 (c) Goverre's Motion in Limine No. 3 to exclude additional
   or inconsistent corporate representative testimony was
   DENIED at the Final Pretrial Conference;

 (d) Goverre's Motion in Limine No. 4 to exclude plaintiff's
   evidence of customer complaints or defective Goverre
   products was DENIED at the Final Pretrial Conference;

      (e)    Goverre's Motion in Limine No. 5 to exclude previously undisclosed evidence of actual damages was DENIED at the Final Pretrial Conference; and

      (f)    Goverre's Motion to Exclude Plaintiff's Expert Ronald Butters was DENIED at the Final Pretrial Conference.

The rulings regarding the foregoing evidentiary motions are stated in the minutes of the Final Pretrial Conference.  (Dkt. No. 163.)

      (g)    Defendants Regan Kelaher and Shannon Zappala's Objection to Answer to Counterclaim (Dkt. No. 49) is hereby OVERRULED.

      (h)    At the Final Pretrial Conference, Defendants indicated they may file an additional motion in limine and the Court GRANTED leave to do so within fourteen (14) days of that Order.  That ruling is stated in the minutes of the Final Pretrial Conference.  (Dkt. No. 163.)

No other matters are pending before the Court.

13.    Bifurcation of the following issues for trial is ordered: none

14.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated: February 15, 2019

Hon. Josephine L. Staton
UNITED STATES DISTRICT JUDGE